**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **PAMELA K. HARTNETT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action No.: 3:23-cv-17** |
| **CHARLES VANEVERA HARDENBERGH,** ) | |
| ) | |
| **And** ) | |
| ) | |
| **MARI LIZA HARDENBERGH,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## COMPLAINT

Plaintiff, Pamela K. Hartnett ("Plaintiff" or "Hartnett"), by counsel, hereby alleges the following causes of action against Defendants, Charles Vanevera Hardenbergh ("Mr. Hardenbergh") and Mari Liza Hardenbergh ("Mrs. Hardenbergh") (collectively, "Defendants"), jointly and severally:

## INTRODUCTION

1. This matter arises from the infliction of significant personal injuries and damages to the personal properties of Hartnett by Defendants, beginning on the night of July 20, 2019, and continuing into the next days.

2. In addition, this matter includes a claim of defamation against Defendants for their campaign of lies and false statements about Hartnett that falsely state, infer, and imply that Hartnett lied and/or fabricated her allegations against Defendants to law enforcement, Hartnett is a sociopath and/or mentally deranged, and Hartnett had committed violent criminal acts, Hartnett

embezzled from her employer, and Hartnett "plotted and schemed to get money via fixed verdicts and shady claims."

3.    Defendants' defamatory campaign began on or after January 6, 2022 when Defendants' criminal cases were nolle processed in the Circuit Court of the City of Petersburg by Richard Newman, the Special Prosecutor/Commonwealth Attorney for the City of Hopewell.

4.    As a direct result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer serious personal injuries, severe and permanent emotional distress, and damage to her reputation.

## **PARTIES**

5.    Plaintiff, Pamela K. Hartnett, is a natural person and a citizen of the State of North Carolina.

6.    Defendant, Charles Vanevera Hardenbergh, also known as "Van," is a natural person and citizen of the Commonwealth of Virginia, last known residing in the City of Petersburg, or in a county within this Court's jurisdiction.

7.    Mr. Hardenbergh is also a licensed attorney in the Commonwealth of Virginia, with a law office in the City of Petersburg, and over the course of his relationship with Hartnett engaged and employed Hartnett to be a driver for him in his law practice and work for his private charity.

8.    Defendant, Mari Liza Hardenbergh, is a natural person and citizen of the Commonwealth of Virginia, last known residing in the City of Petersburg, or in a county within this Court's jurisdiction.

9.    At all relevant times, Mr. Hardenbergh was married to Mrs. Hardenbergh.

2

## JURISDICTION AND VENUE

10.     This action was initially filed in the Circuit Court for the County of Cumberland, Virginia, on July 19, 2021, and was voluntarily non-suited on July 7, 2022.

11.     Plaintiff has timely filed this action within six months from the date of the non-suit order entered by the Circuit Court for the County of Cumberland.

12.     This Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332 because this is a civil action in where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

13.     Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Richmond Division, pursuant to 28 U.S.C. § 1391, because this is a judicial district in which a defendant resides, and a substantial part of the events giving rise to this action occurred in the City of Petersburg, Virginia.

## FACTUAL BACKGROUND

14.     Hartnett has been a lifelong resident of the City of Petersburg and a long-time educator and administrator, with an excellent reputation in her community.

15.     In February 2017, Hartnett, a single woman, began working for Mr. Hardenbergh by driving him to and from his different law offices in Petersburg and Lexington, Virginia, and driving him to and from his various court appearances across the Commonwealth of Virginia.

16.      Hartnett also worked for Defendants as the volunteer executive director for their non-profit organization, called RockBandVan. The organization owned a limousine-type motor vehicle, which was used for the charity, but was also personally used by Defendants and was usually driven by a chauffeur.

17.     During this time, the parties were also neighbors as they lived less than two blocks away from each other in the City of Petersburg, and Defendants would often visit Hartnett's home and swim in her pool, and otherwise had family-type gatherings at the Hartnett home.

18.      On July 20, 2019, Defendants and Hartnett were driven in Defendants' charity limo by a driver to dinner at Bookbinders in the City of Richmond, and thereafter to a charity event held at the Hippodrome in the City of Richmond and then to return to their homes in Petersburg. A photograph of Hartnett and Mrs. Hardenbergh taken at Bookbinders on July 20, 2019 is attached as Exhibit 1.

19.     Defendants and Hartnett both consumed alcohol at various times during the drive from Petersburg to Richmond, at dinner at Bookbinders, and thereafter at the charity event at the Hippodrome.

20.     On their return to Petersburg, while driving on Interstate 95 South, Defendants were sitting together in the back of the limo in the captain chairs and Hartnett was sitting across from them on the opposite bench when there was a conversation among the parties.

21.     Part of the conversation included Mrs. Hardenbergh complaining to her husband that the pictures taken by Hartnett of her and used for Defendants' charity did not depict Mrs. Hardenbergh in the best way.

22.     Mr. Hardenbergh responded sympathetically to his wife's comments and then turned to Hartnett and asked, "Ah, how is my Pammie?"

23.     At that point, Hartnett told both Defendants, "I am done with both of you."

24.     Then, suddenly without warning, Mr. Hardenbergh jumped out of his chair in the limo and pushed Hartnett down and off the bench and beat her in the face. In doing so, Mr. Hardenbergh placed pillows over Hartnett's head and then held her down while Mrs. Hardenbergh

4

began to severely beat upon Hartnett's face, head, and body for what seemed like a long time, and which ended when the limo arrived at Defendants' home in Petersburg.

25.     At that time, Hartnett, bloodied, beaten, and in shock, quickly exited the limo and walked to her home.

26.     Defendants also exited their limo in front of their home.

27.     As Hartnett was approaching her home's front door, the limo driver pulled up front and asked her if she was ok.

28.     Hartnett then entered her home and locked her doors.

29.     When Hartnett arrived at her home, she took two photographs of the injuries to her face. Photographs of Hartnett's injuries to her face taken on July 21, 2019, at 12:09 a.m., are attached as Exhibit 2.

30.     Shortly after being in her home, Mrs. Hardenbergh came to Hartnett's front door seeking to pick up her dog and Hartnett responded that she was calling the police and Mrs. Hardenbergh could not have the dog.

31.     After Mrs. Hardenbergh left Hartnett's home, Mr. Hardenbergh thereafter appeared at Hartnett's front door and Hartnett refused to let him in telling him also that she was calling the police.

32.     Mr. Hardenbergh then went around to the back of Hartnett's home and came into the house through the back door believed accessed by the use of a key.

33.     Hartnett, fearing for her life, then tried to call 911 on her cell phone but it was not charged.

34.     Hartnett then went upstairs to her bedroom to call 911 on her land line phone and was followed by Mr. Hardenbergh who quickly interrupted her 911 phone call by hanging up the phone. Mr. Hardenbergh began again to physically assault and batter Hartnett in her bedroom.

35.     Hartnett, fearing for her life, tried to free herself by going into a nearby sitting room, however Mr. Hardenbergh followed and continued to assault and batter her.

36.     Hartnett, still fearing for her life, freed herself to go out on the adjoining upstairs deck off the room, where she began screaming for help, however Mr. Hardenbergh grabbed her and threw her back into the room on a sofa. As Mr. Hardenbergh's beat her, Hartnett continued to try to move away from him, but he continued beating her, breaking a table and television in the room in the process. A photograph of the broken table is attached as Exhibit 3.

37.     During this time, Hartnett noticed Mrs. Hardenbergh had returned to Hartnett's home and was upstairs in Hartnett's home just outside the room filming Hartnett's beating by Mr. Hardenbergh on her cell phone.

38.     Mrs. Hardenbergh then took Hartnett's iPhone, iPad, and security cameras from inside the home.

39.     Mr. Hardenbergh then continued beating Hartnett and told her she needed her face washed and he wanted to take her into the bathroom to wash her face. Hartnett in shock and confusion replied, "If Mari leaves, I will let you wash my face." At that time, Mrs. Hardenbergh stated, "I got what I came for," and then she left.

40.     Thereafter, Hartnett, lying on her bed barely conscious, in shock, and in great pain with blood on her face and body, eventually passed out. Then, Mr. Hardenbergh dragged Hartnett off the three-foot-high bed, hitting her body on the floor, and pulled her across the floor into the bathroom where he attempted to wash off her face.

6

41.     Unable to do anything herself and against her will, Mr. Hardenbergh undressed Hartnett and placed her in the bed sometime after 4:00 a.m. Hartnett, barely conscious, believes Mr. Hardenbergh left the home after she was placed in her bed where she again passed out.

42.     On the early morning of July 21, 2019, Mr. Hardenbergh again came unannounced into Hartnett's home, waking her up and pleading with her saying he was sorry as he was crying. At that time, Mr. Hardenbergh told Hartnett she needed a shower. Mr. Hardenbergh then put Hartnett in the shower and bathed her while she just stood there in fear and shock.

43.     After the shower, Mr. Hardenbergh stayed in Hartnett's bedroom and wrote a list out regarding his relationship with Hartnett, which stated:

> I am grateful for: 1.) My trusted friend Pam and her love 2.) Our girls 3.) Every memory of Pam smiling at me 4.) When we can be happy and sit on the beach. 5.) Mike's daughter

A photograph of Mr. Hardenbergh's list is attached as Exhibit 4. Mr. Hardenbergh left this note on Hartnett's night stand next to her bed.

44.     Photographs of Hartnett's injuries taken on July 21, 2019, at 11:06 a.m., on July 22, 2019, at 11:02 a.m., and on July 23, 2019, at 10:39 a.m., are attached as Exhibit 5.

45.     Later on July 21, 2019, at 12:35 p.m., Mr. Hardenbergh contacted Hartnett by text message, asking Hartnett: "Are you ok?" Hartnett responded: "Van, right now I don't know what ok is." Mr. Hardenbergh responded: "I know the feeling. I have been turned inside out and upside down. I love you Pammie and I am so sorry we fought. Mari is packing me up to go to Lexington. I hope you will come with me," explaining that he wanted to leave early for Lexington, two days prior to the original date to leave for a court matter, and begged Hartnett to go with him. Hartnett, still very much in shock and physically and emotionally traumatized due to the severe beating she received by Defendants responded that she could not think about doing that or any packing. A copy of the text messages is attached as Exhibit 6.

46.     Defendants then arrived at Hartnett's home unannounced. Defendants used extreme pressure on Hartnett to force her to go to Lexington with Mr. Hardenbergh against her will, including the threat of their presence and Hartnett's great fear of being beaten again and possibly killed, Mr. Hardenbergh's invocation of his prior close personal relationship with Hartnett over the preceding years, and Mr. Hardenbergh's own threats of self-harm. Hartnett was still in shock and very much traumatized by Defendants' beating of her in their limo and Mr. Hardenbergh's further beating of Hartnett at her home.

47.     While Mr. Hardenbergh packed Hartnett's clothes, Mrs. Hardenbergh specifically apologized to Hartnett for beating her and other matters and tried to hug Hartnett, which Hartnett rebuffed.

48.     Mr. Hardenbergh then began to drive Hartnett and himself in his personal vehicle to Defendants' home in Lexington.

49.     Once in Lexington, Hartnett was left in the Defendants' Lexington home while Mr. Hardenbergh attended to his law office in Lexington, leaving Hartnett with no transportation.

50.     Hartnett remained in Defendants' Lexington home against her will for five (5) days during which time she asked Mr. Hardenbergh numerous times if he would take her home, but he declined and said not yet, "your face looks horrible."

51.     Finally, as Mr. Hardenbergh had a court appearance in Hanover County, he loaded up Hartnett's belongings and Hartnett drove Mr. Hardenbergh to the Hanover County Court Complex where Mr. Hardenbergh instructed Hartnett to park far away from the building so no one would see her and to wait for him. After his court appearance, Mr. Hardenbergh returned to the car and Hartnett drove to her home in Petersburg.

52.     Later that evening, Hartnett, with her own legal assistance, reported in a sworn statement Defendants' criminal actions to the local law magistrate's office on Thursday, July 25, 2019, which resulted in the issuance of criminal warrants against Defendants for malicious wounding, abduction by force/intimidation, entering her house to commit assault and battery, damage phone line, destruction of property, and grand larceny. At the same time, Hartnett also obtained an emergency protective order against Defendants. Hartnett's Criminal Complaint against Defendants is attached as Exhibit 7.

53.     Defendants were thereafter served with the criminal warrants and obtained the legal services of Lee Kilduff to represent Mr. Hardenbergh and David Whaley to represent Mrs. Hardenbergh. Defendants later also retained Peter Elides of Hopewell.

54.     Due to conflicts with the Petersburg Commonwealth's Attorney Office—where one of its then-senior Assistant Commonwealth Attorneys, Elsa Seidel, was a former employee of Mr. Hardenbergh and friends of both Defendants—said office moved the Petersburg Circuit Court for the appointment of a former Petersburg Assistant Commonwealth Attorney and the then-current Commonwealth Attorney of the City of Hopewell, Virginia, Richard K. Newman ("Newman"), as Special Prosecutor. The Petersburg Circuit Court entered the appointment order for Newman on August 8, 2019.

55.     Thereafter, the criminal warrants against Defendants were *nolle prossed* by Newman in the Petersburg General District Court on November 18, 2019, to which Hartnett opposed.

56.      Criminal warrants were again obtained by Hartnett, and again they were *nolle prossed* by Newman in the Petersburg General District Court on December 16, 2019, to which Hartnett again opposed.

57.    On or about January 8, 2020, after Hartnett's continued efforts to seek justice, Newman sought and obtained from the local multi-jurisdictional grand jury in Circuit Court of Colonial Heights, Virginia, the issuance of multiple criminal indictments of felonies and misdemeanors against both Defendants.

58.    Due to delays caused by the COVID-19 pandemic, trials were finally set in the Petersburg Circuit Court for both Defendants, with a January 14, 2022 trial set for Mrs. Hardenbergh and a March 2022 trial for Mr. Hardenbergh.

59.    Hartnett, along with her counsel, meet on or about June 25, 2021 with Kurt D. Lockwood ("Lockwood"), Newman's Assistant Commonwealth Attorney, in his offices in Hopewell, Virginia.  Newman had previously advised Hartnett's counsel that Lockwood would be handling Hartnett's case. The meeting with Lockwood lasted for nearly two hours and ended with Hartnett and her counsel given assurances by Lockwood that the criminal matter against the Defendants was going to trial.

60.    Thereafter, and without consulting Hartnett beforehand, Newman advised defense counsel, Hartnett, and her counsel by email dated December 10, 2021 of his intent to place Defendants' criminal matter on the Court's Docket for January 6, 2022 at 9:00 a.m., stating that prior to that date Defendants are to have paid DCJS in full as to the amounts that have been disbursed to Ms. Hartnett due to treatment received, and further stated: "Both should be enrolled in anger management classes. They will be ordered by the Court to complete those classes. If both of these matters are done by that date I will take a nolle prosequi of the charges." *See* E-mail from Newman, December 10, 2021, 10:26 a.m., attached as Exhibit 8.

61.    On January 6, 2022, retired Circuit Court and substitute Judge Daniel Balfour, sitting in the Petersburg Circuit Court, granted the *nolle prosequi* motions, and they were entered

January 20, 2022. However, said Orders did not have the conditions as stated by Newman in his December 10th email. Further, Newman's motion and the Court's Orders were entered over Hartnett's strong objections. *See* Orders, attached as Exhibit 9.

62.     Upon the *nolle prosequi* of the criminal charges against Defendants on January 20, 2022, Defendants, to cover up and deflect their known criminal guilt, began a campaign of defaming Plaintiff on Facebook. Defendants' defamatory Facebook posts set forth below are attached as Exhibit 10. Defendants posted the following false and defamatory statements about and related to Hartnett by referring to her as Pam H, or "Pam ❤️💋," and stating, inferring, and implying she committed criminal acts and lied about Defendants' criminal acts:

> a.      On March 17, 2022, at 8:36 a.m., Mr. Hardenbergh posted:
>
> THE THING ABOUT PAM…
>
> If y'all haven't seen this fascinating new series about a CRAZY Pam, it is riveting. Pam appears to be a pillar of the community, but underneath it she is a lying sociopath who ingratiates herself and tries to make herself part of the victim's family. The similarities between the real-life Pam H and our own local crackpot Pam H are eerily uncanny. Motivated by greed and a desire for control over others, both seek to constantly undermine people by lying and seeking to cast blame on innocent victims after perpetrating unthinkable crimes against them. They give Pams a bad name!!! You will definitely get a blast out of this excellent drama based on real life…

This post compares Hartnett with Pam Hupp, a murderer. Further, in response to a comment, "So, this is an accurate portrayal of "that" Pam??? Lol," Mr. Hardenbergh stated:

> I couldn't say how accurate it is. Some folks who lived in the location where Pam Hupp committed her crimes have commented in an online fan forum that the characters are EXACTLY like their real-life counterparts. I can say that the similarities between this disturbed bird and our real-life Pam H here in Petersburg are numerous. Both are accomplished liars who are completely self-centered, manipulative, and dangerous parasites. More to come…

Again, Mr. Hardenbergh alleges Hartnett is an "accomplished" liar.

b.      On March 19, 2022, at 7:25 p.m., Mrs. Hardenbergh posted, and Mr.

Hardenbergh reposted: "We never regret being kind to the wrong people because the wrong

people are often the victims of liars. But our specialty is uncovering the truth. So if you've

been the victim of a con artist, call us at 1-866-Van-Wins and we will fight for you!

#TheThingAboutPam." This post implies that Hartnett is a liar and con artist.

c.      On March 29, 2022, at 7:37 p.m., Mr. Hardenbergh posted:

What's Pam's Problem???

It's Pam Day!!! That's the day the latest episode of The Thing About Pam
is released. Before we try to figure out what makes Pam so crazy, let's look
at the Top Ten Things Pam Hupp has in common with Petersburg's own
notorious Pam ❤️🤏, another known con artist with sociopathic tendencies,
primarily lying – first and foremost she is a shameless liar who is
fundamentally dishonest and treacherous…

1. Greed – Both had the same motivation for their crimes – to get money.
2. Strict Catholic Upbringing – They were raised in the church and act pious.
3. Violence – Both commit violent crimes, claiming their victims are to
blame.
4. False Witness Against Thy Neighbor – Knowingly blaming innocent
people.
5. Fired for Dishonesty – One for forging signatures, the other for
embezzling.
6. Constantly Ingratiating Themselves – Wanting to be part of victims'
family.
7. Relationship Status: Fail – One is twice divorced, one never got a
proposal.
8. Next to the youngest – Both were born next to last in large families (4 &
7).
9. Inheritance – Greed strong enough to exclude siblings from a parent's
estate.
10. Imposters – Both claimed in communications to be someone else. They
lied.

Mr. Hardenbergh again likened Hartnett with murderer Pam Hupp and falsely

alleged, in part, that Hartnett is a sociopath, liar, committed violent crimes, and embezzled

from her employer.

Later, on March 29, 2022, at 10:20 p.m., Mrs. Hardenbergh reposted Mr. Hardenbergh's post, and added: "Pam ❤️💋 is a shameless liar who is fundamentally dishonest and treacherous…," with three pictures of Pam Hupp.

d.      On April 2, 2022, at 10:56 p.m., Mrs. Hardenbergh stated, "It's the City's fourth homicide this year and we have LIARS in the world like Pam ❤️💋 wasting law enforcement's time and resources. #pathetic."

e.      On April 7, 2022, Mr. Hardenbergh posted:

SHOULD WOMEN WHO LIE FACE CONSEQUENCES?

History is full of men and women who made false accusations against others. The recent smash hit The Thing About Pam illustrates a prime example. In our hometown it is particularly fascinating phenomenon because of the striking similarities between the protagonist and our own disturbed dingbat, Pam ❤️💋…

What motivated them? In both cases, old fashioned greed. Both Pams are courtroom veterans who have plotted and schemed to get money via fixed verdicts and shady claims.

Who made them what way? It seems that both grew up at the hands of an abusive parent. Both struggled with their weight. Both got the bulk of their assets from the death of someone close to them. Both pretended falsely to be the victim when in fact they were the perpetrator.

But there were also differences. One is a mother of two, the other an old maid, a crone. One is from the midwest, the other born and raised right here in Petersburg. While the two aren't exactly identical, what they have in common is truly apparent from the beginning. If you haven't seen it, this is TOP quality binge watching material. The final episode comes out next week, stay tuned!!!

Mr. Hardenbergh again compared Hartnett to murderer Pam Hupp and falsely alleged, in part, Hartnett "plotted and schemed to get money via fixed verdicts and shady claims."

13

   f.  On April 13, 2022, on or about 3:21 p.m., Mr. Hardenbergh posted, and

Mrs. Hardenbergh reposted, in part:

> Too many BS crimes that waste their time, a prime example being
> Petersburgh's notorious Pam ❤️💋, who fabricated fantastic claims against
> Mrs [sic] Fabulous and Yours Truly, charging us with preposterous counts
> of abduction, breaking and entering, assault, etc. Even after the charges
> were dismissed 3 times by 3 different judges, this woman STILL tried to
> get the Magistrate to let her swear out the charges again. When they refused,
> she slithered right over to the Police Department to see if perhaps they might
> receive her entreaties a bit more warmly.
>
> No dice. The by now long worn-out victim act was of no further use. But
> y'all know that a leopard doesn't change it's spots, right? Not to worry my
> friends, the story isn't over yet. In fact, it's only just beginning!!!
>
> Although I would LOVE to disclose ALL of the JUICY DETAILS and
> SALACIOUS GOSSIP that people have shared with us, the time has not
> quite yet come for the big reveal(s). But what I can tell you is this: witnesses
> have stated that Pam has a lifelong pattern of trying to break up couples.
> She ingratiates herself and seems like a bosom buddy at first, but it's a long
> con that unfolds treacherously over time. More details on her MO and past
> victims to come.
>
> For now, all I can confirm is that PART of the problem here in Petersburg
> is created by false claims that are composed of nothing but lies. The liars
> who perpetrate these frauds are just like Pam Hupp and Pam ❤️💋,
> sociopaths who love to scheme and scam, wasting the time of police officers
> and attempting to frame completely innocent people as part of a greedy
> grifter's game of larcenous betrayal. Stay tuned y'all…

   Mr. Hardenbergh falsely alleged Hartnett lied to the police about her claims against

Defendants, tries to break up couples, and is a sociopath akin to murderer Pam Hupp.

   63.  These statements made by Defendants about Hartnett are false and defamatory as

they state, infer, and imply that Hartnett lied and/or fabricated her allegations against Defendants

to law enforcement, Hartnett is a sociopath and/or mentally deranged, and Hartnett had committed

violent criminal acts, Hartnett embezzled from her employer, and Hartnett "plotted and schemed

to get money via fixed verdicts and shady claims."

14

64.     During March and April 2022, Defendants publicly displayed a large sign on the east side of Mr. Hardenbergh's law office, stating, "The Law Offices of Charles V. Hardenbergh proudly protect and defend and victims of," then includes three large pictures of Hartnett (but in reality one is not her on the lower right), and one picture of her attorney, with the words "Registered Sex Offenders," "Extortionists," "Liars," and "Violence" around the pictures, and further provides, "call 1-866-VAN-WINS. TO GET JUSTICE, GO AFTER CROOKED LAWYERS WHO VICTIMIZE POOR LITTLE OLD LADIES, OR TO RENT THIS SPACE." A photograph of the sign is attached as Exhibit 11.

65.     These statements made by Defendants about Hartnett are false and defamatory as they state, infer, and imply that Hartnett is a registered sex offender, extortionist, liar, and violent. Hartnett is not a registered sex offender, extortionist, liar, or violent.

66.     As a result of Defendants' defamation campaign, Hartnett moved out of the City of Petersburg to the State of North Carolina where she is now a resident. Prior to this move, Hartnett was out of her own home for eleven months after her attack by Defendants in July 2019.

67.     Hartnett has sought physical and mental health medical treatment due to the injuries inflicted by Defendants on July 20-21, 2019 and has been in mental health treatment ever since. Hartnett has been diagnosed with Post-Traumatic Stress Disorder and Battered Woman Syndrome.

68.     Further, Hartnett has been defamed and damaged by Defendants' false and defamatory statements that Hartnett lied and/or fabricated her allegations against Defendants to law enforcement, Hartnett is a sociopath and/or mentally deranged, Hartnett had committed violent criminal acts, Hartnett embezzled from her employer, Hartnett "plotted and schemed to get money via fixed verdicts and shady claims," and Hartnett is a registered sex offender, extortionist, liar, and violent.

## STATEMENT OF CLAIMS

## COUNT I:

## ASSAULT AND BATTERY

69.     Hartnett incorporates by reference and re-alleges each allegation set forth above.

70.     As detailed in paragraph 24, on July 20, 2019, while Hartnett rode in a limo with Defendants, Mr. Hardenbergh pushed Hartnett and beat her in the face. In addition, Mr. Hardenbergh placed pillows over Hartnett's head and held her down while Mrs. Hardenbergh severely beat upon Hartnett's face.

71.     As detailed in paragraphs 34 to 36 and 39 to 42, later on the night of July 20, 2019 and on the morning of July 21, 2019, Mr. Hardenbergh further viciously attacked and beat Hartnett in her home. Additionally, Mr. Hardenbergh undressed and bathed Hartnett without her consent.

72.     Defendants' actions caused Hartnett reasonable apprehension and fear of imminent harmful or offensive contact, physical injury, and/or death as Hartnett feared for her life, attempted to call 911, attempted to flee, and screamed for help.

73.     Defendants' actions intended to cause either harmful or offensive contact with Hartnett.

74.     Defendants' actions constitute unwanted touchings which were neither consented to, excused, or justified.

75.     Defendants' actions were willful, wanton, intentional, and performed with malice and/or reckless disregard for Hartnett's rights and well-being.

76.     Due to Defendants' unlawful conduct, Hartnett suffered severe physical injuries and emotional and mental distress, which is ongoing, anxiety, stress, embarrassment, humiliation, pain, suffering, and loss of enjoyment of life, and incurred medical expenses.

## COUNT II:

### DEFAMATION

77.     Hartnett incorporates by reference and re-alleges each allegation set forth above.

78.     As detailed in paragraphs 62 to 63, Defendants began a campaign of defaming Plaintiff on Facebook in March and April 2022, including, but not limited to, statements made by Defendants about Hartnett that falsely state, infer, and imply that Hartnett lied and/or fabricated her allegations against Defendants to law enforcement, Hartnett is a sociopath and/or mentally deranged, and Hartnett had committed violent criminal acts, Hartnett embezzled from her employer, and Hartnett "plotted and schemed to get money via fixed verdicts and shady claims."

79.     Further, as detailed in paragraphs 64 to 65, Defendants publicly displayed a sign on the east side of Mr. Hardenbergh's law office, that falsely state, infer, and imply that Hartnett is a registered sex offender, extortionist, liar, and violent.

80.     The statements set forth above by Defendants are false statements of fact about Hartnett.

81.     The statements set forth above are defamatory *per se* and made with knowledge that they were false or with reckless disregard of whether they were false or not, were reckless, intentional and willful.

82.     The statements about Hartnett above impute to her the commission of some criminal offense involving moral turpitude; unfitness to perform the duties of employment or want of integrity in the discharge of the duties of employment; and/or prejudice her in her profession or trade.

83.     The statements about Hartnett tend to injure and have the requisite defamatory sting to her reputation in the common estimation of mankind, to throw contumely, shame, or disgrace

upon her, or which tends to hold her up to scorn, ridicule, or contempt, or which is calculated to render her infamous, odious, or ridiculous.

84.     Defendants made these false statements about Hartnett in an effort to retaliate against Hartnett for bringing lawful criminal charges against them and to cover up and deflect their known criminal guilt.

85.     At all times, Defendants have been motivated by hatred, personal spite, ill will, and a desire to punish Hartnett.

86.     Defendants' actions were willful, wanton, intentional, and performed with malice and/or reckless disregard for Hartnett's rights and well-being.

87.     Due to Defendants' unlawful conduct, Hartnett has suffered emotional and mental distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to her good name and reputation in the community, and loss of enjoyment of life.

### COUNT III:

### NEGLIGENCE, GROSS NEGLIGENCE, AND/OR WILLFUL AND WANTON NEGLIGENCE

88.     Hartnett incorporates by reference and re-alleges each allegation set forth above.

89.     Defendants owed Hartnett a duty of reasonable and ordinary care to avoid injuring Hartnett at all times, including while she was a passenger within their vehicle and/or within reach of their conduct.

90.     Defendants breached this duty of care when, without legal cause or excuse, they beat and injured Hartnett in their vehicle and beat and injured Hartnett in her home.

91.     Further, Defendants breached this duty of care by leaving Hartnett at her home in an injured condition and facing possible death, confining Hartnett against her will for five (5) days thereafter, and failing to provide her professional medical treatment for her injuries.

18

92.    Defendants' conduct constitutes gross negligence, including, but not limited to, when, without legal cause or excuse, they beat and injured Hartnett in their vehicle and beat and injured Hartnett in her home; they left Hartnett at her home in an injured condition and facing possible death; they confined Hartnett against her will for five (5) days thereafter; and they failed to provide her professional medical treatment for her injuries.

93.    Defendants acted with indifference to and/or exhibited an utter disregard of caution and prudence to Hartnett, and which actions amount to complete neglect of the safety of Hartnett when they engaged in what amounted to a one-sided physical confrontation/altercation and the beating of Hartnett which left Hartnett in a condition of severe injury and close to death without any professional medical treatment or attention.

94.    Defendants' conduct constitutes willful and wanton negligence, including, but not limited to, when, without legal cause or excuse, they beat and injured Hartnett in their vehicle and beat and injured Hartnett in her home; they left Hartnett at her home in an injured condition and facing possible death; they confined Hartnett against her will for five (5) days thereafter; and they failed to provide her professional medical treatment for her injuries.

95.    The circumstances and nature of the force Defendants engaged in towards Hartnett, the nature of her severe injuries suffered, as well as Defendants' abandonment of Hartnett without medical treatment to suffer and to possibly die were such Defendants exhibited a conscious disregard for Hartnett's rights and a reckless disregard and indifference to the consequences to Hartnett's injuries and condition.

96.    Defendants were aware, or should have been aware, from their knowledge of existing circumstances and conditions, that their conduct would result in severe injury or possible death to Hartnett.

19

97.     Due to Defendants' actions and/or omissions, Hartnett suffered severe physical injuries and emotional and mental distress, which is ongoing, anxiety, stress, embarrassment, humiliation, pain, suffering, and loss of enjoyment of life, and incurred medical expenses.

## COUNT IV:

## TRESPASS

98.     Hartnett incorporates by reference and re-alleges each allegation set forth above.

99.     At all relevant times, Hartnett had possession, actual or constructive, of her home and personal property therein.

100.    On or about July 21, 2019, Mr. Hardenbergh entered Hartnett's home without her consent or authorization multiple times and proceeded to physically assault and batter and otherwise unlawfully touch Hartnett in her home.

101.    In doing so, Mr. Hardenbergh damaged Hartnett's home, including, but not limited to, breaking a table and television.

102.    In addition, Mrs. Hardenbergh entered Hartnett's home without her consent or authorization, and took Hartnett's iPhone, iPad, and security cameras from inside her home.

103.    Defendants' actions were committed in bad faith and with intentional disregard of the rights of Hartnett.

104.    Due to Defendants' actions, Hartnett suffered damages to her person and her personal property.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, by counsel, respectfully requests this Court:

A.      Enter judgment in Plaintiff's favor and against Defendants, Charles Vanevera Hardenbergh and Mari Liza Hardenbergh, jointly and severally, in whole or in part;

B.      Award Plaintiff special damages for all pecuniary losses, including, but not limited to, medical expenses, with interest on the same running from the date such expenses were incurred until the date a final judgment is entered;

C.      Award Plaintiff general damages in an amount not less than $2,000,000.00 for all other compensatory damages, including, but not limited to, emotional and mental distress and great injury to her good name and reputation, with interest on the same running from the dates of injury until the date a final judgment is entered;

D.      Award Plaintiff punitive damages with pre-judgment interest an amount not less than $350,000.00;

E.      Grant Plaintiff leave to amend these pleadings and/or to add further facts and claims as further evidence and circumstances may dictate;

F.      Award Plaintiff pre- and post-judgment interest; and

G.      Award Plaintiff all other such equitable relief as may be appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**PAMELA K. HARTNETT**
*Plaintiff*

By:      _____/s/_____
James B. Thorsen, Esq.
VSB No. 18113
Attorney for Plaintiff
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thorsenallen.com

Ann M. Reardon, Esq.
VSB No. 24230
Attorney for Plaintiff
Ann Reardon Law, PLC
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 317-5150

Facsimile: (804) 447-7813
E-mail: annreardonlaw@gmail.com