**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **PAMELA K. HARTNETT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )    **Civil Action No.: 3:23-cv-17** |
| **CHARLES VANEVERA** | ) |
| **HARDENBERGH,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, Pamela K. Hartnett ("Plaintiff" or "Hartnett"), by counsel, hereby responds in

opposition to the Motion to Dismiss Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure filed by Defendants, Charles Vanevera Hardenbergh ("Mr.

Hardenbergh"), Mari Liza Hardenbergh ("Mrs. Hardenbergh"), Israel De La Cruz, Charles V.

Hardenbergh, PC, Commonwealth Attorney Marketing Service, LLC, The Monroe Building, LLC,

and 135 Monroe, LLC (collectively, "Defendants"), stating as follows:

## <u>INTRODUCTION</u>

This matter initially arose from a vicious and malicious assault and battery of Hartnett by

Mr. and Mrs. Hardenbergh (the "Hardenberghs") on July 20-21, 2019. Thereafter, Hartnett brought

criminal charges against the Hardenberghs. Upon the *nolle prosequi* of the criminal charges against

the Hardenberghs on January 20, 2022, the Hardenberghs, among others, repeatedly defamed

Hartnett on Facebook and prominently displayed a large defamatory sign on the side of Mr.

Hardenbergh's law office. Further, in early May 2022, Mr. Hardenbergh maliciously instituted

criminal proceedings and sought a protective order, with the active cooperation of Mrs.

Hardenbergh and Mr. De La Cruz, against Hartnett based upon unfounded, false allegations. On January 27, 2023, the criminal charges against Hartnett were *nolle prosequi a*nd the protective order was dismissed after Mr. Hardenbergh admitted, under oath, that he maliciously made the Facebook posts to bait Hartnett into reacting and doing something against her own interest. Hartnett now brings this matter in effort to seek justice against the Hardenberghs, among others, for their false, malicious, and unlawful actions which forced her to move to North Carolina in June 2022.

Defendants have filed a Motion to Dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. First, Defendants allege that Hartnett is not a citizen of North Carolina and is domiciled in Virginia, largely based upon allegations predating Hartnett's move to North Carolina and the filing of this action. Next, Defendants claim that certain claims for defamation against Mr. De La Cruz, Mrs. Hardenbergh, and the Corporate Defendants are not pled with particularity (an incorrect statement of law); Mrs. Hardenbergh cannot be liable for republishing defamatory statements (an incorrect statement of law); Mrs. Hardenbergh's statements that Hartnett is a liar—implying that Hartnett lied to law enforcement—is opinion and/or not defamatory; and Defendants cannot be liable for defamation for posting a picture of Hartnett without naming her (an incorrect statement of law). Additionally, Defendants assert that a claim for malicious prosecution cannot arise from a civil proceeding (an incorrect statement of law) and Mrs. Hardenbergh and Mr. De La Cruz did not cooperate in procuring the protective order despite directly contrary representations to another tribunal and the presence of both parties at each hearing therein. Finally, Defendants incredibly contend that Hartnett's causes of action for negligence, gross negligence, and willful and wanton negligence

should be dismissed because they are not pled in separate counts, failing to cite to any authority and ignoring the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

Hartnett respectfully requests the Court to deny Defendants' Motion to Dismiss in whole. Based on substantial evidence presented herein, Hartnett has been very clearly domiciled in North Carolina since June 2022, including at the time this complaint was filed, and only visited Virginia for court appearances related to the Hardenberghs (and Mr. De La Cruz's) unlawful malicious prosecution, to see family, and receive ongoing medical treatment. In addition, Hartnett is not required to plead defamation with particularity; however, Hartnett provided the exact words stated by the parties and Defendants had fair notice of what Hartnett's claim is and the grounds upon which it rests. Mrs. Hardenbergh can be liable for republishing the defamatory statements of her husband and the context of her statements that Hartnett is a liar literally implies that Hartnett made a specific assertion or series of assertions knowing them to be false (lying to law enforcement). Finally, Hartnett is not required to plead the various causes of action in Count III in separate counts as she need only provide "a short and plain statement of the claim showing that she is entitled to relief," "[n]o technical form is required" for pleading these causes of action, and she is permitted to set out two or more statements of a claim in a single count.

In sum, Defendants' Motion to Dismiss fails on all bases, and Hartnett respectfully requests the Court to deny Defendants' Motion to Dismiss in whole.

## **STATEMENT OF FACTS**

### I.     **FACTS RELEVANT TO RULE 12(B)(1)**

While Hartnett had been a lifelong resident of the City of Petersburg, (*see* Am. Compl. ¶ 20), she moved out of the City of Petersburg to the State of North Carolina due to the unlawful actions of Defendants, (*see id.* ¶ 72).

Hartnett is domiciled in and a citizen of the State of North Carolina. (Am. Compl. ¶ 6; ECF No. 4; Hartnet Decl. ¶ 2, attached as Exhibit 1).[1] On June 9, 2022, Hartnett signed a lease for a residence located in Littleton, North Carolina. (*See* Residential Rental Contract Excerpts, attached as Exhibit 2). On June 20, 2022, Hartnett set up an account with Halifax EMC for electrical utilities at her residence in Littleton, North Carolina. (*See* Halifax EMC Application for Membership and Receipt, attached as Exhibit 3). On June 22, 2022, Hartnett obtained a driver's license in North Carolina and insurance coverage for her vehicle in North Carolina. (*See* Driver's License and North Carolina Insurance Identification Card, attached as Exhibit 4; GEICO Insurance Information, attached as Exhibit 5). On June 30, 2022, Hartnett registered her vehicle in North Carolina. (*See* Registration Card, attached as Exhibit 6). On July 7, 2022, Hartnett titled her vehicle in North Carolina. (*See* Certificate of Title, attached as Exhibit 7). On October 4, 2022, Hartnett registered to vote in North Carolina. (*See* Voter Profile, attached as Exhibit 8). From October 11, 2022 to the present, Hartnett has had dermatology appointments in North Carolina. (*See* Past Appointments, attached as Exhibit 9). Hartnett's bank (Truist Bank) is located in Littleton, North Carolina. (Ex. 1, Hartnett Decl. ¶ 5; *see also* Ex. 2). Hartnett attends a Catholic Church in Littleton, North Carolina. (*Id.* ¶ 6). Hartnett is not employed, and she plans on paying taxes as otherwise required in both Virginia and North Carolina for the year 2022. (*See id.* ¶¶ 7-8).

Hartnett does not maintain a residence in Petersburg, Virginia, as she gave her former residence and property to her adult nephew by a recorded deed of gift. (*See* ECF No. 25-5). Hartnett has visited Virginia to receive ongoing medical treatment, to make court appearances and attend meetings with counsel due to the malicious and unlawful criminal and civil actions brought by the

---

[1] Hartnett has redacted her specific address from all attachments and, if necessary, will provide her address to the Court for in camera review. Hartnett remains fearful for her safety and privacy from Defendants.

Hardenberghs and Mr. De La Cruz, and visit her sister and friends in Petersburg, Virginia. (*See* Ex. 1, Hartnett Decl. ¶¶ 10-12). Regarding Mr. Hardenbergh's allegation that a camera observed Hartnett's vehicle passing their building on Monroe Street, (*see* ECF No. 25-6, ¶ 4, Appendix 1), Hartnett drove or was driven in her car to Petersburg General District Court, which is about a block away from Mr. Hardenbergh's building, (*see* Ex. 1, Hartnett Decl. ¶ 11).

## II.     FACTS RELEVANT TO RULE 12(B)(6)

On July 20-21, 2019, Mr. Hardenbergh and Mrs. Hardenbergh (the "Hardenberghs") viciously assaulted and battered Hartnett. (*See* Am. Compl. ¶¶ 24-50). Thereafter, Hartnett pursued criminal actions against the Hardenberghs. (*See id.* ¶¶ 58-67).

### A.     The Hardenberghs' Defamation Campaign Against Hartnett

Upon the *nolle prosequi* of the criminal charges against the Hardenberghs on January 20, 2022, the Hardenberghs, to cover up and deflect their known criminal guilt, began a campaign of defaming Plaintiff on Facebook. (*See id.* ¶ 68). Relevant to this motion, the following posts were made on Facebook:

On March 17, 2022, at 8:36 a.m., Mr. Hardenbergh posted:

THE THING ABOUT PAM…

If y'all haven't seen this fascinating new series about a CRAZY Pam, it is riveting. Pam appears to be a pillar of the community, but underneath it she is a lying sociopath who ingratiates herself and tries to make herself part of the victim's family. The similarities between the real-life Pam H and our own local crackpot Pam H are eerily uncanny. Motivated by greed and a desire for control over others, both seek to constantly undermine people by lying and seeking to cast blame on innocent victims after perpetrating unthinkable crimes against them. They give Pams a bad name!!! You will definitely get a blast out of this excellent drama based on real life…

(Am. Compl. ¶ 69(a)). This post compares Hartnett with Pam Hupp, a murderer. (*Id.*). Mr. Hardenbergh testified that he was thinking of Hartnett when he wrote "our own local crackpot Pam

H." (*See* ECF No. 9-12, Hr'g Tr. 96:10-97:3). Mr. Hardenbergh also testified that this post, and others, was likely written by several individuals, including himself, Mrs. Hardenbergh, and Mr. De La Cruz, among others. (*See id.* 97:4-98:8).

On March 19, 2022, at 7:25 p.m., Mrs. Hardenbergh posted, and Mr. Hardenbergh reposted: "We never regret being kind to the wrong people because the wrong people are often the victims of liars. But our specialty is uncovering the truth. So if you've been the victim of a con artist, call us at 1-866-Van-Wins and we will fight for you! #TheThingAboutPam." (Am. Compl. ¶ 68(b)). This post implies that Hartnett is a liar and con artist. (*Id.*).

On March 29, 2022, at 7:37 p.m., Mr. Hardenbergh posted:

What's Pam's Problem???

It's Pam Day!!! That's the day the latest episode of The Thing About Pam is released. Before we try to figure out what makes Pam so crazy, let's look at the Top Ten Things Pam Hupp has in common with Petersburg's own notorious Pam ❤️💋 , another known con artist with sociopathic tendencies, primarily lying – first and foremost she is a shameless liar who is fundamentally dishonest and treacherous…

1. Greed – Both had the same motivation for their crimes – to get money.
2. Strict Catholic Upbringing – They were raised in the church and act pious.
3. Violence – Both commit violent crimes, claiming their victims are to blame.
4. False Witness Against Thy Neighbor – Knowingly blaming innocent people.
5. Fired for Dishonesty – One for forging signatures, the other for embezzling.
6. Constantly Ingratiating Themselves – Wanting to be part of victims' family.
7. Relationship Status: Fail – One is twice divorced, one never got a proposal.
8. Next to the youngest – Both were born next to last in large families (4 & 7).
9. Inheritance – Greed strong enough to exclude siblings from a parent's estate.
10. Imposters – Both claimed in communications to be someone else. They lied.

(Am. Compl. ¶ 68(c)). Mr. Hardenbergh again likened Hartnett with murderer Pam Hupp and falsely alleged, in part, that Hartnett is a sociopath, liar, committed violent crimes, and embezzled from her employer. (*Id.*). Later, on March 29, 2022, at 10:20 p.m., Mrs. Hardenbergh reposted Mr. Hardenbergh's post, and added: "Pam ❤️💋 is a shameless liar who is fundamentally dishonest and treacherous…," with three pictures of Pam Hupp. (*Id.*). Mr. Hardenbergh testified that he was

thinking of Hartnett when he wrote "Pam 💛🤎." (*See* ECF No. 9-12, Hr'g Tr. 85:20-86:5). Mr. Hardenbergh also testified that this post was likely written by several individuals, including himself, Mrs. Hardenbergh, and Mr. De La Cruz, among others. (*See id.* 94:18-95:15).

On April 2, 2022, at 10:56 p.m., Mrs. Hardenbergh stated, "It's the City's fourth homicide this year and we have LIARS in the world like Pam 💛🤎 wasting law enforcement's time and resources. #pathetic." (Am. Compl. ¶ 68(d)).

On April 13, 2022, on or about 3:21 p.m., Mr. Hardenbergh posted, and Mrs. Hardenbergh reposted, in part:

> Too many BS crimes that waste their time, a prime example being Petersburg's notorious Pam 💛🤎, who fabricated fantastic claims against Mrs [sic] Fabulous and Yours Truly, charging us with preposterous counts of abduction, breaking and entering, assault, etc. Even after the charges were dismissed 3 times by 3 different judges, this woman STILL tried to get the Magistrate to let her swear out the charges again. When they refused, she slithered right over to the Police Department to see if perhaps they might receive her entreaties a bit more warmly.
>
> No dice. The by now long worn-out victim act was of no further use. But y'all know that a leopard doesn't change it's spots, right? Not to worry my friends, the story isn't over yet. In fact, it's only just beginning!!!
>
> Although I would LOVE to disclose ALL of the JUICY DETAILS and SALACIOUS GOSSIP that people have shared with us, the time has not quite yet come for the big reveal(s). But what I can tell you is this: witnesses have stated that Pam has a lifelong pattern of trying to break up couples. She ingratiates herself and seems like a bosom buddy at first, but it's a long con that unfolds treacherously over time. More details on her MO and past victims to come.
>
> For now, all I can confirm is that PART of the problem here in Petersburg is created by false claims that are composed of nothing but lies. The liars who perpetrate these frauds are just like Pam Hupp and Pam 💛🤎, sociopaths who love to scheme and scam, wasting the time of police officers and attempting to frame completely innocent people as part of a greedy grifter's game of larcenous betrayal. Stay tuned y'all…

(Am. Compl. ¶ 68(f)). Mr. Hardenbergh falsely alleged Hartnett lied to the police about her claims against Defendants, tries to break up couples, and is a sociopath akin to murderer Pam Hupp. (*Id.*).

Mr. Hardenbergh testified that the Hardenberghs, among others, maliciously made these Facebook posts to bait Hartnett into reacting and doing something against her own interest. (*See* ECF No. 9-12, Hr'g Tr. 98:14-101:22).

During late March and April 2022, the Hardenberghs and/or employees or agents of Charles V. Hardenbergh, PC, Commonwealth Attorney Marketing Service, LLC, The Monroe Building, LLC, and/or 135 Monroe, LLC publicly displayed a large sign on the east side of Mr. Hardenbergh's law office, located at 139 Monroe Street, Petersburg, Virginia. (*See* ECF No. 9-12, Hr'g Tr. 87:14-88:5, 89:22-90:21). The sign stated, "The Law Offices of Charles V. Hardenbergh proudly protect and defend and victims of," then includes three large pictures of Hartnett (but in reality one is not her on the lower right), and one picture of her attorney, with the words "Registered Sex Offenders," "Extortionists," "Liars," and "Violence" around the pictures, and further provides, "call 1-866-VAN-WINS. TO GET JUSTICE, GO AFTER CROOKED LAWYERS WHO VICTIMIZE POOR LITTLE OLD LADIES, OR TO RENT THIS SPACE." (ECF No. 9-11). The sign was displayed for at least several weeks. (*See* ECF No. 9-12, Hr'g Tr. 92:3-9).

**B.      The Hardenberghs' Civil Malicious Prosecution of Hartnett**

On or about May 4, 2022, Mr. Hardenbergh, with the cooperation of Mrs. Hardenbergh and Mr. De La Cruz, filed a petition for a protective order against Hartnett with the City of Petersburg General District Court. (*See* Am. Compl. ¶ 79; ECF No. 9-14). A preliminary protective order was issued on May 5, 2022. (*See id.*). In the petition, Mr. Hardenbergh falsely alleged, in part, that Hartnett assaulted the Hardenberghs, trespassed, conspired to extort money from them, is known to be armed, has a history of mental issues, has stalked them, and has made specific threats against them. (*See id.* ¶ 80). Both Mrs. Hardenbergh and Mr. De La Cruz were physically

present at each court hearing regarding the petition for the protective order. (Ex. 1, Hartnett Decl. ¶ 13).

On January 27, 2023, a hearing was held in the Petersburg General District Court on the protective order against Hartnett. (*See* Am. Compl. ¶ 83). During the hearing, defense counsel stated, in part:

> The petition specifically seeks the protective order regarding Marty [sic] Hardenbergh and Israel De La Cruz. Although it's captioned in the name of Mr. Hardenbergh, I believe that they should be considered parties and would be allowed to stay in the courtroom. . . .
>
> I'm here on behalf of Mr. and Mrs. Hardenbergh and they are seeking a hearing – a protective order pursuant to 19.2-152.10.

(*See* Hr'g Tr. 24:14-19, 28:20-29:1, excerpts attached as Exhibit 10). The Court heard the testimony of Mr. Hardenbergh and received evidence related to the petition for a protective order. (Am. Compl. ¶ 85). After Mr. Hardenbergh admitted to maliciously making Facebook posts to bait Hartnett into reacting and doing something against her own interest, (*see* ECF No. 9-12, Hr'g Tr. 98:14-101:22), his counsel immediately moved to dismiss his petition for a protective order, (*see id.* 102:1-6).

## **STANDARD OF REVIEW**

## I. **STANDARD OF REVIEW FOR RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.**

In this case, Defendants contend that "the jurisdictional allegations of the complaint were not true," *see Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); namely, that there is not complete diversity between the parties because Plaintiff is still a citizen of Virginia, (*see* ECF No. 25, at 7-10). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "A trial

court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams*, 697 F.2d at 1219. "A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id.* "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Id.*

"The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768. "The moving party should prevail ***only if*** the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (emphasis added).

## II.     STANDARD OF REVIEW FOR RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated "if the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). This plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible she is entitled to relief. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see*

*also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. A court considering a 12(b)(6) motion must "draw all reasonable factual inferences" from the facts alleged in the Complaint in the plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). As such, "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 555 (quotations omitted and ellipsis in original). A complaint may therefore survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* (quotations and citations omitted).

"[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244. Dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is limited to "the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief." *Browning v. Vecellio & Grogan, Inc.*, 945 F. Supp. 930, 931 (W.D. Va. 1996).

## ARGUMENT

### I. HARTNETT IS DOMICILED IN AND A CITIZEN OF NORTH CAROLINA; THEREFORE, THERE IS COMPLETE DIVERSITY BETWEEN THE PARTIES.

Defendants do not dispute that they are all considered citizens of the Commonwealth of Virginia. Rather, Defendants claim that Hartnett is not a citizen of North Carolina, relying on dated allegations prior to Hartnett's relocation to North Carolina.

Pursuant to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). "This statute and its predecessors have consistently been held to require complete diversity of citizenship. That

is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S. Ct. 2396, 2402 (1978) (emphasis in original).

"For purposes of diversity jurisdiction, residency is not sufficient to establish citizenship. To be a citizen of a State, a person must be both a citizen of the United States and a domiciliary of that State. Domicile requires physical presence, coupled with an intent to make the State a home." *See Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008) (citations omitted). "In evaluating complete diversity, the relevant unit of analysis is the party's domicile 'at the time the complaint is filed.'" *Gilmore v. Jones*, 370 F. Supp. 3d 630, 646 (W.D. Va. 2019) (quoting *Martinez v. Duke Energy Corp.*, 130 F. App'x 629, 634 (4th Cir. 2005)).

> When citizenship is questioned, a court must make an individualized inquiry relying on certain factors such as voter registration; current residence; the location of real and personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes. No single factor is dispositive.

*Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017) (internal citations omitted)

In this case, Hartnett satisfies nearly every factor set forth in by the Fourth Circuit in *Scott*. First, Hartnett is registered to vote in North Carolina. (*See* Ex. 8). Second, Hartnett has resided in North Carolina since on or about June 9, 2022, when she entered a lease agreement. (*See* Ex. 2). Indeed, Hartnett pays for utilities at her North Carolina residence. (*See* Ex. 3). Third, Hartnett has possession of personal property in North Carolina, including her vehicle and furniture. (*See* Ex. 1, Hartnett Decl. ¶ 4). Fourth, Hartnett is a member of a local North Carolina church. (*See id.* Hartnett Decl. ¶ 6). Fifth, Hartnett has a driver's license and car insurance, title, and registration in North Carolina. (*See* Exs. 4-7). Hartnett is not employed, and she plans on paying taxes as otherwise required in both Virginia and North Carolina for the year 2022. (*See* Ex. 1, Hartnett Decl. ¶¶ 7-8).

While Hartnett had been a lifelong resident of the City of Petersburg until June 2022, (*see* Am. Compl. ¶ 20), she moved out of the City of Petersburg to the State of North Carolina due to the unlawful actions of Defendants, (*see id.* ¶ 72). Hartnett does not maintain a residence in Petersburg, Virginia, as she gave her former residence and property to her adult nephew by a recorded deed of gift. (*See* ECF No. 25-5). Hartnett has visited Virginia to receive ongoing medical treatment, to make court appearances and attend meetings with counsel due to the malicious and unlawful criminal and civil actions brought by the Hardenberghs and Mr. De La Cruz, and visit her sister and friends in Petersburg, Virginia. (*See* Ex. 1, Hartnett Decl. ¶¶ 10-12). Regarding Mr. Hardenbergh's allegation that a camera observed Hartnett's vehicle passing their building on Monroe Street, (*see* ECF No. 25-6, ¶ 4, Appendix 1), Hartnett drove or was driven in her car to Petersburg General District Court, which is about a block away from Mr. Hardenbergh's building, (*see* Ex. 1, Hartnett Decl. ¶ 11).

At the time the complaint was filed, on January 5, 2023, Hartnett's domicile clearly was North Carolina.

## II.   THE AMENDED COMPLAINT STATES A CLAIM FOR DEFAMATION AGAINST THE ADDITIONAL DEFENDANTS.

In Virginia, the elements of defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 269 Va. 569, 575 (2005). "To be 'actionable,' the statement must be not only false, but also defamatory, that is, it must 'tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (alteration in original). "[D]efamatory words are those that make the plaintiff appear odious, infamous, or ridiculous." *Id.* (quotations omitted). "Defamatory statements may include

statements made by inference, implication, or insinuation." *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 47 (2009).

> In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor. However, the meaning of the alleged defamatory language can not, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it can not introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain.

*Carwile v. Richmond Newspapers*, 196 Va. 1, 8 (1954). Further, "a court must consider the statement as a whole." *Lewis v. Kei*, 281 Va. 715, 725 (2011).

> The requirement that an allegedly defamatory statement be considered as a whole also is vital to a determination of the truth or falsity of a defamation claim, because defamatory statements may be made by implication, inference, or insinuation. Thus, the factual portions of an allegedly defamatory statement may not be evaluated for truth or falsity in isolation, but must be considered in view of any accompanying opinion and other stated facts.

*Hyland*, 277 Va. at 47-48 (citations omitted).

"Good pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further, — that is, it must purport to give the exact words." *Fed. Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 215 (1939). "However, details such as the time and place of the alleged communication, the name of a defendant's agent, and the names of the individuals to whom the defamatory statement was purportedly communicated can be provided in a bill of particulars if not included in a plaintiff's pleading." *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 134 (2003).[2]

---

[2] Defendants incorrectly cite *Fuste* in support of the proposition that "Defamation in Virginia must be pled with particularity." (ECF No. 25, at 14). This is an incorrect statement of law.

## A.     Mr. De La Cruz

Defendants allege, "No specific Facebook posts are identified nor is Mr. De La Cruz mentioned by name as making any statements." (ECF No. 25, at 12). However, the Amended Complaint clearly identifies Mr. De La Cruz as being involved in drafting posts by Mr. Hardenbergh on March 17 and 29, 2022. (*See* Am. Compl. ¶¶ 68(a), (c)). Indeed, Mr. Hardenbergh implied that his brother-in-law (Mr. De La Cruz) and his wife (Mrs. Hardenbergh) were involved in drafting the March 17, 2022 post. (*See* ECF No. 9-12, Hr'g Tr. 96:2-97:16). Further, Mr. Hardenbergh, as to the March 29, 2022 post, alleged, "I don't recall that I wrote that. There was definitely a lot of group editing on that post. And different people had different ideas about what should go into it." (*See* ECF No. 9-12, Hr'g Tr. 94:18-21).

In addition, Defendants assert, "[t]here is no recitation of the time, place, and contents of any alleged false representation specifically attributable to Mr. De La Cruz." (*See* ECF No. 25, at 12). However, Hartnett is only required to provide the exact defamatory words, not the time and place of the defamation. Regardless, the Amended Complaint did so, providing the exact time of each defamatory Facebook post and the place: Facebook.

Finally, Hartnett properly pled that Mr. De La Cruz maliciously made these Facebook posts to bait Hartnett into reacting and doing something against her own interest. (*See* Am. Compl. ¶ 69). Mr. De La Cruz did not personally know Hartnett and his involvement in drafting these defamatory posts clearly was at the very least reckless.

Hartnett need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

> Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. "The provisions

for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512-13 (2002).

It is uncontroverted that the Facebook posts occurred and were publicly published on Facebook. The specific knowledge of who was involved in the drafting of the defamatory Facebook posts is solely in the possession of Defendants. Indeed, Hartnett was unaware of Mr. De La Cruz's involvement until Mr. Hardenbergh's testimony at the hearing on January 27, 2023. Discovery in this matter will be vital in determining the scope of involvement of Mr. De La Cruz. Based on the sworn representations of Mr. Hardenbergh, Mr. De La Cruz was involved in the drafting of at least two of the offending Facebook posts. As such, Hartnett respectfully requests this Court to deny Defendants' motion to dismiss Mr. De La Cruz from Count II of the Amended Complaint.

### B. Mrs. Hardenbergh

As an initial matter, as set forth above, Hartnett has properly alleged that Mrs. Hardenbergh was involved in the drafting of Mr. Hardenbergh's Facebook posts on March 17 and 29, 2022.

Next, Defendants incredibly allege that Mrs. Hardenbergh is absolutely immune from liability for republishing Mr. Hardenbergh's defamatory Facebook posts, stating "[t]he re-publication of allegedly defamatory content is actionable in Virginia against the original *drafter*, not the individual who re-publishes the content." (ECF No. 25, at 14 (emphasis in original)).[3] This

---

[3] In support of this proposition, Defendants incorrectly cite to *Weaver v. Beneficial Finance Co.*, 199 Va. 196 (1957), which instead stands for the proposition: "It is well settled that the author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication." 199 Va. at 199. *Weaver* does not address whether the individual who republished the defamation is also liable.

is a flagrantly incorrect statement of established law. "'Repetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted.'" *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016) (quoting *Goldwater v. Ginzburg*, 414 F.2d 324, 337 (2d Cir.1969), *cert. denied*, 396 U.S. 1049, 90 S.Ct. 701 (1970)); *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 485 (E.D. Va. 2018).

In this case, Mrs. Hardenbergh repeated Mr. Hardenbergh's words knowing "that the words are false or inherently impropable, or there are obvious reasons to doubt the veracity of the person quoted." As alleged in the Amended Complaint, Mrs. Hardenbergh reposted Mr. Hardenbergh's false and defamatory Facebook post of March 29, 2022, and further added: "Pam ❤️🩹 is a shameless liar who is fundamentally dishonest and treacherous…," with three pictures of Pam Hupp. (*See* Am. Compl. ¶ 68(c)). Mr. Hardenbergh's original post likened Hartnett with murderer Pam Hupp and falsely alleged, in part, that Hartnett is a sociopath, liar, committed violent crimes, and embezzled from her employer. (*See id.*). Further, Mrs. Hardenbergh reposted Mr. Hardenbergh's false and defamatory Facebook post of April 13, 2022. (*See id.* ¶ 68(f)). Mr. Hardenbergh's original post falsely alleged Hartnett lied to the police about her claims against Defendants, tries to break up couples, and is a sociopath akin to murderer Pam Hupp. (*See id.*). Defendants do not challenge whether the original Facebook posts by Mr. Hardenbergh on March 29, 2022 or April 13, 2022 are defamatory. (*See* ECF No. 25, at 14). Mrs. Hardenbergh maliciously made these Facebook posts to retaliate against Hartnett for bringing lawful criminal charges against her and to cover up and deflect her known criminal guilt and/or bait Hartnett into reacting and doing something against her own interest. (*See* Am. Compl. ¶¶ 69 ,103). At all times, Mrs. Hardenbergh has been motivated by hatred, personal spite, ill will, and a desire to punish Hartnett.

(*See id.* ¶ 105). Further, as Mr. Hardenbergh's wife, Mrs. Hardenbergh had reason to know that his statements about Hartnett were false.

Finally, Defendants claim that a statement that Hartnett is a liar "merely expresses an opinion and does not rise to the level of defamation." (ECF No. 25, at 14-15). "In determining whether a statement can be reasonably interpreted as stating actual facts about an individual, we look to the circumstances in which the statement is made." *Schnare v. Ziessow*, 104 F. App'x 847, 851 (4th Cir. 2004). It is well-established that stating a person is a liar is actionable for defamation in certain contexts, such as is present in this case.

> The terms 'lie' and 'liar' are frequently used to characterize statements with which the speaker vehemently disagrees. If in context the words mean that the defendant disapproves, it is a protected epithet. If it literally implies that the plaintiff made a specific assertion or series of assertions knowing them to be false, it may be actionable.

*Edwards v. Schwartz*, 378 F. Supp. 3d 468, 525 (W.D. Va. 2019) (quoting Robert D. Sack, Sack on Defamation: Libel, Slander and Related Problems § 2.4.7 at 2-48-2-49 (4th ed. 2010)).

Here, Mrs. Hardenbergh is "literally impl[ying] that [Hartnett] made a specific assertion or series of assertions knowing them to be false." Specifically, Mrs. Hardenbergh made a defamatory implication in a Facebook post on March 19, 2022 that Hartnett is a liar and con artist. (*See* Am. Compl. ¶ 68(b)). Further, on March 29, 2022, Mrs. Hardenbergh reposted Mr. Hardenbergh's Facebook post of that same date that likened Hartnett with murderer Pam Hupp and falsely alleged, in part, that Hartnett is a sociopath, "False Witness Against Thy Neighbor – Knowingly blaming innocent people," committed violent crimes, and embezzled from her employer, and Mrs. Hardenbergh added, "Pam 🧡💋 is a shameless liar who is fundamentally dishonest and treacherous…," with three pictures of Pam Hupp. (*See id.* ¶ 68(c)). Additionally, on April 2, 2022, Mrs. Hardenbergh stated, in part, "we have LIARS in the world like Pam 🧡💋 wasting law

enforcement's time and resources. #pathetic." (*See id.* ¶ 68(d)). In the context of these three posts, Mrs. Hardenbergh very clearly implies that Hartnett lied about the criminal allegations against the Hardenberghs to law enforcement. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20-21 (1990) (finding statements that imply someone committed perjury to be actionable defamatory statements of fact).

### C.    The Corporate Defendants

Defendants allege that the "Amended Complaint does not allege *which* corporate defendant purported to take *what* actions, if any. The alleged sign does not name the plaintiff, nor does it make a statement regarding the plaintiff." (ECF No. 25, at 16). Again, Defendants misunderstand the law and pleading requirements.

As an initial matter, the sign may not "name the plaintiff," but it includes two pictures of her. (*See* Am. Compl. ¶ 70). To argue that defamation does not attach because you don't specifically name an individual is blatantly incorrect. Rather, "it is well established that although libel is generally perpetrated by written communication, it also includes defamation through the publication of pictures or photographs." *See, e.g.*, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 708, 320 S.E.2d 70, 80 (1983); *Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743, 786 (W.D. Va. 2014) ("A photograph can constitute a defamatory statement." (citing *Peck v. Trib. Co.*, 214 U.S. 185, 188 (1909)); *White v. Nicholls*, 44 U.S. 266, 291, 11 L. Ed. 591 (1845) ("[E]very publication, either by writing, printing, or **pictures**, which charges upon or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous, or odious, or ridiculous, is prima facie a libel, and implies malice in the author and publisher towards the person concerning whom such publication is made." (emphasis added)). In addition, the sign very clearly

makes a statement about Hartnett by including the words "Registered Sex Offenders," "Extortionists," "Liars," and "Violence" around her pictures. (*See id.*).

Next, the Amended Complaint does not specify which corporate defendant was involved in the creation of the sign. Mr. Hardenbergh testified as follows:

> Q Mr. Hardenbergh, you also -- I don't know if the Court wants to see it -- you also had a poster or some type of banner printed, did you not?
> A I did not print that.
> Q You did not print that?
> A No, I did not.
> THE WITNESS: Some folks in my office printed it but it was not me.
> Q And you allowed it and you put it up on the side of your office so that --
> A I knew of it.
> THE COURT: Did you have it printed, is what she said?

(*See* ECF No. 9-12, Hr'g Tr. 87:14-88:5). The sign was displayed on the east side of Mr. Hardenbergh's law office, located at 139 Monroe Street, Petersburg, Virginia. (*See id.* Hr'g Tr. 89:22-90:21, 91:9-11).

Hartnett need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

> Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512-13 (2002).

Based on the testimony of Mr. Hardenbergh, "folks in [his] office" were involved, and each of the corporate defendants is owned, controlled by, and related to Mr. Hardenbergh's office. (*See* Am. Compl. ¶¶ 13-15). The knowledge of who was specifically involved in the creation, printing, and display of the defamatory sign is solely in the possession of Defendants. Discovery in this

matter will be vital in determining the scope of involvement of each corporate defendant. Regardless, the allegations set forth in the Amended Complaint clearly put all the corporate defendants on notice as to the claims against them—defamation related to the preparation and display of the defamatory sign.

## III. THE AMENDED COMPLAINT STATES A CLAIM FOR MALICIOUS PROSECUTION AGAINST MR. DE LA CRUZ AND MRS. HARDENBERGH.

It is well-established in Virginia that "a cause of action for malicious prosecution will lie for the malicious institution of a groundless civil proceeding." *Donohue Const. Co., Inc. v. Mount Vernon Assocs.*, 235 Va. 531, 540 (1988). "The plaintiff must allege and prove that: (1) the prosecution was set on foot by the defendant and was terminated in a manner not unfavorable to the plaintiff; (2) it was instituted or procured by the cooperation of the defendant; (3) it was without probable cause; and (4) it was malicious." *Ayyildiz v. Kidd*, 220 Va. 1080, 1082 (1980). Further, "a plaintiff in a malicious prosecution action based upon civil proceedings must plead and prove arrest of his person, seizure of his property, or special injury." *Donohue Const. Co., Inc.*, 235 Va. at 540. "[In]stigation or co-operation may be chargeable to the defendant from original steps taken by him to incite the prosecution, or from subsequent adoption and ratification by him of steps which have already been taken or instigated by others." *Clinchfield Coal Corp. v. Redd*, 123 Va. 420, 96 S.E. 836, 839 (1918).

"[M]alice is defined as any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier*, 255 Va. 330, 333, 497 S.E.2d 471, 473 (1998). For example, "an individual pursues a criminal prosecution maliciously if her basis for suspecting a defendant is so tenuous that the prosecution can be said to have been 'directed by chance' against the defendant." *Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 111 (2021). In addition, malice can be inferred from "a

history of animosity between the parties because the determination of malice is based on the parties' entire course of conduct towards each other" or "a lack of probable cause." *See id.* at 111-12.

First, Defendants improperly rely on the unpublished circuit court case of *Cory v. Thompson* for the proposition that "seeking a protective order is not a criminal proceeding subject to a malicious prosecution claim." (*See* ECF No. 19-20). However, the court in *Cory* clearly erred in finding that a malicious prosecution action cannot arise from civil proceedings. *See Donohue Const. Co., Inc.*, 235 Va. at 540 (finding "a cause of action for malicious prosecution will lie for the malicious institution of a groundless civil proceeding").

Defendants next allege that Mrs. Hardenbergh and Mr. De La Cruz did not cooperate with the issues of the protective order, stating, in part, "the May 4, 2022 petition for a protective order is not signed by Mrs. Hardenbergh or Mr. De La Cruz. Their names are only included on the petition to identify them as family or household members who would be protected by the issuance of the protective order." (*See* ECF No. 25, at 20). However, defense counsel argued the very opposite at the hearing regarding the protective order on January 27, 2023, stating, in part:

> The petition specifically seeks the protective order regarding Marty [sic] Hardenbergh and Israel De La Cruz. Although it's captioned in the name of Mr. Hardenbergh, I believe that they should be considered parties and would be allowed to stay in the courtroom. . . .
>
> I'm here on behalf of Mr. and Mrs. Hardenbergh and they are seeking a hearing – a protective order pursuant to 19.2-152.10.

(*See* Ex. 10, Hr'g Tr. 24:14-19, 28:20-29:1). Further, both Mrs. Hardenbergh and Mr. De La Cruz were physically present at each court hearing regarding the petition for the protective order. (Ex. 1, Hartnett Decl. ¶ 13). The inclusion on the protective order of and presence at the hearing of Mrs.

Hardenbergh and Mr. De La Cruz constitutes active cooperation, adoption, and ratification of the institution of civil proceedings for a protective order.

Further, Defendants claim that the Amended Complaint failed to plead that Mrs. Hardenbergh and/or Mr. De La Cruz cooperation was malicious. The Amended Complaint is replete with allegations of malice. In fact, Defendants directly cite to the exact language that sets out malice: "Mrs. Hardenbergh and/or Mr. De La Cruz cooperated with Mr. Hardenbergh in seeking the civil protective order **with knowledge that the allegations contained within were false or with reckless disregard of whether they were false or not**." (Am. Compl. ¶ 131 (emphasis added)). Further, the Amended Complaint provides:

> At all times, Defendants, particularly the Hardenberghs, have been motivated by hatred, personal spite, ill will, and a desire to punish Hartnett.
>
> Defendants' actions were willful, wanton, intentional, and performed with malice and/or reckless disregard for Hartnett's rights and well-being.

(*See id.* ¶¶ 105-106). Mrs. Hardenbergh and Mr. De La Cruz knew the outlandish allegations contained within the protective order were false or, at least in Mr. De La Cruz's case, ratified those allegations with reckless disregard of whether they were false or not. In doing so, they acted without probable cause and "upon no or such slight grounds of suspicion as to indicate a general disregard of [others]." *See Freezer v. Miller*, 163 Va. 180, 202, 207 (1934).

## IV.   THE AMENDED COMPLAINT STATES A CLAIM FOR NEGLIGENCE, GROSS NEGLIGENCE, AND WILLFUL AND WANTON NEGLIGENCE.

Defendants alleges that Count III must fail because Hartnett "combines three separate causes of action under one count." (ECF No. 25, at 21). Defendants then set out the law for each cause of action, yet, at no point do Defendants assert Hartnett failed to plead any cause of action. (*See* ECF No. 25, at 21-24). Instead, Defendants claim Hartnett "does not distinguish any particular

facts associated with any of the three causes of action contained in this singular count." (*See* ECF No. 25, at 23-24).

There is no aesthetic pleading requirement that requires Hartnett to separate each related cause of action into separate counts. *See, e.g.*, Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); *id.* 8(d)(1) ("Each allegation must be simple, concise, and direct. No technical form is required."); *id.* 8(d)(2) ("A party may set out 2 or more statements of a claim . . . either in a single count . . . or in separate ones."). Hartnett properly pled each cause of action therein. For example, paragraphs 109 to 111 relate to the Hardenberghs' breach of a duty of reasonable and ordinary care, which relate to each cause of action; paragraphs 112 and 113 relate to gross negligence; paragraphs 114 to 116 relate to willful and wanton negligence; and paragraph 117 relates to Hartnett's damages, which relate to each cause of action. (*See* Am. Compl, ¶¶ 108-117).

## CONCLUSION

WHEREFORE, Plaintiff, Pamela K. Hartnett, by counsel, respectfully requests the Court to deny the Motion to Dismiss filed by Defendants, Charles Vanevera Hardenbergh ("Mr. Hardenbergh"), Mari Liza Hardenbergh ("Mrs. Hardenbergh"), Israel De La Cruz, Charles V. Hardenbergh, PC, Commonwealth Attorney Marketing Service, LLC, The Monroe Building, LLC, and 135 Monroe, LLC, in whole or in part, and award such other relief as may be just and appropriate, including leave to amend the Complaint.

Respectfully submitted,

**PAMELA K. HARTNETT**
*Plaintiff*

By:        _____/s/_____

James B. Thorsen, Esq.
VSB No. 18113
Attorney for Plaintiff
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thorsenallen.com

Ann M. Reardon, Esq.
VSB No. 24230
Attorney for Plaintiff
Ann Reardon Law, PLC
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 317-5150
Facsimile: (804) 447-7813
E-mail: annreardonlaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April, 2023, a copy of the foregoing was filed electronically with the clerk of court using CM/ECF system, which will send notification of such filing (NEF) to the following:

Thomas K. Plofchan, Jr., Esquire
VSB No. 34536
46175 Westlake Drive, Suite 320
Potomac Falls, VA 20165
Telephone: (703) 406-7616
Facsimile: (703) 444-9498
Email: tplofchan@westlakelegal.com

By: _____/s/_____
James B. Thorsen, Esq.
VSB No. 18113
Attorney for Plaintiff
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thorsenallen.com

Ann M. Reardon, Esq.
VSB No. 24230
Attorney for Plaintiff
Ann Reardon Law, PLC
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 317-5150
Facsimile: (804) 447-7813
E-mail: annreardonlaw@gmail.com