# RESIDENTIAL RENTAL CONTRACT

NOTE: THIS AGREEMENT WILL BECOME LEGALLY BINDING ONLY WHEN IT HAS BEEN SIGNED BY TENANT AND BY OR ON BEHALF OF LANDLORD

RESIDENT: **Pamela Kathleen Hartnett** ("Tenant")
OWNER: **Doris H. Riddick, Stephen Jackson** ("Landlord")
REAL ESTATE MANAGEMENT FIRM: **Waterfront Properties at Lake Gaston, Inc** ("Agent")

PREMISES: City: **Littleton** County: **Warren** State of North Carolina
[X] Street Address: _____ Zip Code: **27850**
[ ] Apartment Complex: _____ Apartment No. _____
[ ] Other Description (Room, portion of above address, etc.): _____

"Premises" shall include both the inside and outside of any dwelling unit, and any exterior areas such as any front/back yard, in Tenant's exclusive control.

INITIAL TERM: Beginning Date of Lease: **06/10/2022** Ending Date of Lease: **05/31/2023**

RENT: $ **550.00** PAYMENT PERIOD: [X] monthly [ ] weekly [ ] yearly [ ] other: _____

LATE PAYMENT FEE: $ **15.00** OR _____ % of rental payment, whichever is greater
(State law provides that the late fee may not exceed $15.00 or five percent (5%) of the rental payment, whichever is greater.)
RETURNED CHECK FEE: $ **25.00** (The maximum processing fee allowed under State law is $35.00.)
SECURITY DEPOSIT: $ **500.00** to be deposited with: (check one) [ ] Landlord [X] Agent
LOCATION OF DEPOSIT: (insert name of bank): **First Citizens Bank**
BANK ADDRESS: **Main Street, Littleton NC 27850**

FEES FOR COMPLAINT FOR SUMMARY EJECTMENT AND/OR MONEY OWED (See paragraph 17) (NOTE: Landlord may charge and retain only one of the following fees in addition to any court costs):
- COMPLAINT-FILING FEE: $ **15.00** OR _____ % of rental payment, whichever is greater *(Fee may not exceed $15.00 or five percent (5%) of the rental payment, whichever is greater.)*
- COURT APPEARANCE FEE: **10.000** % of rental payment *(Fee may not exceed ten percent (10%) of the rental payment.)*
- SECOND TRIAL FEE: **12.000** % of rental payment *(Fee may not exceed twelve percent (12%) of the rental payment.)*

PERMITTED OCCUPANTS (in addition to Tenant): **Immediate & Extended family**

CONTACT PERSON IN EVENT OF DEATH OR EMERGENCY OF TENANT (name and contact information):
**Mary Hartnett 804-691-6543**

IN CONSIDERATION of the promises contained in this Agreement, Landlord, by and through Agent, hereby agrees to lease the Premises to Tenant on the following terms and conditions:

1. **Termination and Renewal:**
   (a) **Termination at End of Initial Term.** EITHER LANDLORD OR TENANT MAY TERMINATE THE TENANCY AT THE EXPIRATION OF THE INITIAL TERM BY GIVING WRITTEN NOTICE TO THE OTHER AT LEAST **30** DAYS PRIOR TO THE EXPIRATION DATE OF THE INITIAL TERM.
   (b) **Renewal.** IN THE EVENT SUCH WRITTEN NOTICE IS NOT GIVEN OR IF THE TENANT HOLDS OVER BEYOND THE INITIAL TERM, THE TENANCY SHALL AUTOMATICALLY BECOME A **month** (PERIOD) TO **month** (PERIOD) TENANCY UPON THE SAME TERMS AND CONDITIONS CONTAINED HEREIN.
   (c) **Termination at End of Renewal Term.**
      (i) IF THE TENANCY IS RENEWED ON A CALENDAR MONTH-TO-MONTH BASIS, IT MAY THEREAFTER BE TERMINATED BY EITHER LANDLORD OR TENANT GIVING THE OTHER WRITTEN NOTICE, WITH THE TERMINATION TO BE EFFECTIVE ON THE LAST DAY OF THE CALENDAR MONTH FOLLOWING THE CALENDAR MONTH DURING WHICH THE NOTICE IS GIVEN.
      (ii) IF THE TENANCY IS RENEWED ON ANYTHING OTHER THAN A CALENDAR MONTH-TO-MONTH BASIS, THE TENANCY MAY BE TERMINATED BY EITHER LANDLORD OR TENANT GIVING THE OTHER **30** DAYS WRITTEN NOTICE PRIOR TO THE LAST DAY OF THE FINAL PERIOD OF THE TENANCY, WITH THE TERMINATION TO BE EFFECTIVE ON THE LAST DAY OF THE FINAL PERIOD OF THE TENANCY.


North Carolina Association of REALTORS®, Inc.



STANDARD FORM 410 - T
Revised 7/2020
© 7/2021

Tenant Initials _____ _____

Waterfront Props. at Lake Gast, 1698 Eaton Ferry Road Littleton NC 27850 Phone: (252)586-7600 Fax: (252)586-7955 LGEstates
Henrietta Williams Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

(**NOTE:** State and Federal law permit early termination of leases under certain circumstances by members of the United States Armed Forces. For information, see *Questions and Answers on: North Carolina Military Personnel Residential Lease Termination,* available on the website of the NC Real Estate Commission at www.ncrec.gov.

2. **Rent:** Tenant shall pay the Rent, without notice, demand or deduction, to Landlord or as Landlord directs. The first Rent payment, which shall be prorated if the Initial Term commences on a day other than the first day of the Payment Period, shall be due on _____**July 1st 2022**_____ (date). Thereafter, all rentals shall be paid in advance on or before the **FIRST** day of each subsequent Payment Period for the duration of the tenancy. Rentals not paid on or before the first day of the Payment Period will be considered late, and any such non-payment will constitute a breach of this Agreement.

3. **Late Payment Fees and Returned Check Fees:** Tenant shall pay the Late Payment Fee if any rental payment is five (5) days or more late. *This late payment fee shall be due immediately without demand therefor and shall be added to and paid with the late rental payment. Tenant also agrees to pay the Returned Check Fee for each check of Tenant that is returned by the financial institution because of insufficient funds or because the Tenant did not have an account at the financial institution.*

4. **Tenant Security Deposit:** The Security Deposit shall be paid prior to Tenant's occupancy of the Premises, and shall be administered in accordance with the North Carolina Tenant Security Deposit Act (N.C.G.S. § 42-50 et. seq.). IT MAY, IN THE DISCRETION OF EITHER THE LANDLORD OR THE AGENT, BE DEPOSITED IN AN INTEREST-BEARING ACCOUNT WITH THE BANK OR SAVINGS INSTITUTION NAMED ABOVE. ANY INTEREST EARNED UPON THE TENANT SECURITY DEPOSIT SHALL ACCRUE FOR THE BENEFIT OF, AND SHALL BE PAID TO, THE LANDLORD, OR AS THE LANDLORD DIRECTS. SUCH INTEREST, IF ANY, MAY BE WITHDRAWN BY LANDLORD OR AGENT FROM SUCH ACCOUNT AS IT ACCRUES AS OFTEN AS IS PERMITTED BY THE TERMS OF THE ACCOUNT.

Upon any termination of the tenancy herein created, the Landlord may deduct from the Tenant Security Deposit amounts permitted under the Tenant Security Deposit Act. If there is more than one person listed above as Tenant, Agent may, in Agent's discretion, pay any balance of the Tenant Security Deposit to any such person, and the other person(s) agree to hold Agent harmless for such action. If the Tenant's address is unknown to the Landlord, the Landlord may deduct any permitted amounts and shall then hold the balance of the Tenant Security Deposit for the Tenant's collection.

If the Landlord removes Agent or Agent resigns, the Tenant agrees that Agent may transfer any Tenant Security Deposit held by Agent hereunder to the Landlord or the Landlord's designee and thereafter notify the Tenant by mail of such transfer and of the transferee's name and address. The Tenant agrees that such action by Agent shall relieve Agent of further liability with respect to the Tenant Security Deposit. If Landlord's interest in the Premises terminates (whether by sale, assignment, death, appointment of receiver or otherwise), Agent shall transfer the Tenant Security Deposit in accordance with the provisions of North Carolina General Statutes § 42-54.

5. **Tenant's Obligations:** Unless otherwise agreed upon, the Tenant shall:
(a) use the Premises for residential purposes only and in a manner so as not to disturb the other tenants;
(b) not use the Premises for any unlawful or immoral purposes or occupy them in such a way as to constitute a nuisance;
(c) not engage in, or permit any member of Tenant's household or any guest to engage in, criminal activity on or in the immediate vicinity of any portion of the Premises;
(d) keep the Premises, including but not limited to all plumbing fixtures, facilities and appliances, in a clean and safe condition;
(e) cause no unsafe or unsanitary condition in the common areas and remainder of the Premises used by him;
(f) comply with any and all obligations imposed upon tenants by applicable building and housing codes;
(g) dispose of all ashes, rubbish, garbage, and other waste in a clean and safe manner and comply with all applicable ordinances concerning garbage collection, waste and other refuse;
(h) use in a proper and reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, if any, furnished as a part of the Premises;
(i) not deliberately or negligently destroy, deface, damage or remove any part of the Premises, whether inside or outside any dwelling unit, or permit any person, known or unknown to the Tenant, to do so;
(j) be responsible for all damage, defacement, or removal of any property inside a dwelling unit in the Tenant's exclusive control (including but not limited to all appliances and fixtures) unless the damage, defacement or removal was due to ordinary wear and tear, acts of the Landlord or the Landlord's agent, defective products supplied or repairs authorized by the Landlord, acts of third parties not invitees of the Tenant, or natural forces;
(k) pay the costs of all utility services to the Premises which are billed directly to the Tenant and not included as a part of the rentals, including, but not limited to, water, electric, telephone, and gas services;
(l) conduct himself and require all other persons on the Premises with his consent to conduct themselves in a reasonable manner and so as not to disturb other tenants' peaceful enjoyment of the Premises;
(m) not abandon or vacate the Premises during the Initial Term or any renewals or extensions thereof. Tenant shall be deemed to have abandoned or vacated the Premises if Tenant removes substantially all of his possessions from the Premises; and

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com                LGEstates

(n) not smoke cigarettes, cigars, pipes or any other tobacco or lighted product of any kind in any interior portion of the Premises, including any detached structures, and to pay the cost of any abatement, cleaning, ductwork replacement that may be necessary as a result of Tenant's failure to comply with this obligation; and

(o) **Recognize home as a non-smoking home ... June rent to be pro-rated....**

_____

_____

_____

6. **Landlord's Obligations:** Unless otherwise agreed upon, the Landlord shall:

(a) comply with the applicable building and housing codes to the extent required by such building and housing codes;

(b) make all repairs to the Premises as may be necessary to keep the Premises in a fit and habitable condition; provided, however, in accordance with paragraph 11, the Tenant shall be liable to the Landlord for any repairs necessitated by the Tenant's intentional or negligent misuse of the Premises;

(c) keep all common areas, if any, used in conjunction with the Premises in a clean and safe condition;

(d) promptly repair all facilities and appliances, if any, as may be furnished by the Landlord as part of the Premises, including electrical, plumbing, sanitary, heating, ventilating, and air conditioning systems, provided that the Landlord, except in emergency situations, actually receives notification from the Tenant in writing of the needed repairs; and

(e) within a reasonable period of time based upon the severity of the condition, repair or remedy any imminently dangerous condition on the Premises after acquiring actual knowledge or receiving notice of the condition. Notwithstanding Landlord's repair or remedy of any imminently dangerous condition, Landlord may recover from Tenant the actual and reasonable costs of repairs that are the fault of Tenant.

7. **Utility Bills/Service Contracts:** Landlord and Tenant agree that utility bills and service contracts ("Service Obligations") for the Premises shall be paid by the party indicated below as to each Service Obligation. The party agreeing to be responsible for payment of a Service Obligation agrees to timely pay the applicable Service Obligation, including any metering, hook-up fees or other miscellaneous charges associated with establishing, installing and maintaining such utility or contract in that party's name. Within thirty (30) days of the Beginning Date of this Lease, Tenant shall provide Landlord with a copy of any requested information about any Service Obligation for which Tenant has agreed to be responsible. Any Service Obligation not designated below shall be the responsibility of Tenant unless the parties agree otherwise in writing.

| Service obligation | Landlord | Tenant | N/A |
|---|---|---|---|
| Sewer/Septic | X | ☐ | ☐ |
| Water | X | ☐ | ☐ |
| Electric | ☐ | X | ☐ |
| Gas | ☐ | X | ☐ |
| Telephone | ☐ | X | ☐ |
| Security System | ☐ | X | ☐ |
| Trash disposal/dumpster | ☐ | X | ☐ |
| Landscaping | ☐ | X | ☐ |
| Lawn Maintenance | ☐ | X | ☐ |
| **Cable TV/DirecTV; WIFI; Phone, etc.** | ☐ | X | ☐ |
|  | ☐ | ☐ | ☐ |
|  | ☐ | ☐ | ☐ |

8. **Smoke and Carbon Monoxide Alarms:** Pursuant to North Carolina General Statutes § 42-42, the Landlord shall provide operable smoke alarms, either battery-operated or electrical. If the Premises has a fossil-fuel burning heater, appliance, or fireplace, or an attached garage, the Landlord shall provide and install a minimum of one operable carbon monoxide alarm per level in

Page 3 of 8      STANDARD FORM 410 - T
Revised 7/2020
Tenant Initials _____ _____      © 7/2021

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      LGEstates

the Premises, either battery operated or electrical. The Tenant shall notify the Landlord, in writing, of the need for replacement of or repairs to a smoke or carbon monoxide alarm. The Landlord shall replace or repair the smoke or carbon monoxide alarm within 15 days of receipt of notification if the Landlord is notified of needed replacement or repairs in writing by the Tenant. The Landlord shall ensure that a smoke or carbon monoxide alarm is operable and in good repair at the beginning of the Initial Term of the Tenancy. The Landlord shall place new batteries in any battery-operated smoke or carbon monoxide alarms at the beginning of the Initial Term of the tenancy **and the Tenant shall replace the batteries as needed during the tenancy,** except where the smoke alarm is a tamper-resistant, 10-year lithium battery smoke alarm.

9. **Rules and Regulations:**

   (a) **Landlord Rules and Regulations:** The Tenant, his family, servants, guests and agents shall comply with and abide by all the Landlord's existing rules and regulations and such future reasonable rules and regulations as the Landlord may, at Landlord's discretion, from time to time, adopt governing the use and occupancy of the Premises and any common areas used in connection with them (the "Rules and Regulations"). Landlord reserves the right to make changes to the existing Rules and Regulations and to adopt additional reasonable rules and regulations from time to time; provided however, such changes and additions shall not alter the essential terms of this lease or any substantive rights granted hereunder and shall not become effective until thirty (30) days' written notice thereof shall have been furnished to Tenant. A copy of the existing Rules and Regulations are attached hereto and the Tenant acknowledges that he has read them. The Rules and Regulations shall be deemed to be a part of this lease giving to the Landlord all the rights and remedies herein provided.

   (b) ☐ *(check if applicable)* **Owner Association Rules and Regulations:** The Premises are subject to regulation by the following owners/condo association:
   - Name of association: _____
   - Name of association property manager/president: _____
   - Contact address and phone number: _____
   - Association website address, if any: _____

   Tenant agrees to abide by any applicable owners' association regulations as they now exist or may be amended.

10. **Right of Entry:** Landlord hereby reserves the right to Landlord, Agent and their respective agents and representatives to enter the Premises during reasonable hours for the purpose of (1) inspecting the Premises and the Tenant's compliance with the terms of this lease; (2) making such repairs, alterations, improvements or additions thereto as they may deem appropriate; (3) showing the Premises to prospective purchasers or tenants; and (4) displaying "For Sale" or "For Rent" signs in a reasonable manner upon the Premises. Tenant acknowledges and understands that in the case of an emergency, the Landlord, Agent and their agents and representatives may need to enter the Premises at any hour to cause repairs to be made to preserve or prevent further damage from occurring to the Premises, and the Tenant agrees to cooperate reasonably with them in the event of any such emergency.

11. **Payment for repair of Damages:** Tenant agrees to pay Landlord for the cost of repairing any damage for which Tenant is responsible upon receipt of Landlord's demand therefor, and to pay the Rent during the period the Premises may not be habitable as a result of any such damage. Such damage may include but is not limited to window panes, shutters, or screens damaged by Tenant, filthy ovens, refrigerators, kitchen floors, cabinets or bathrooms, drink stains on carpet, unauthorized paint colors, and lawn, shrubbery or tree damage caused by Tenant or Tenant's animals.

12. **Pets:** Tenant agrees not to keep or allow anywhere on or about the Premises any animals or pets of any kind, whether on a temporary basis or otherwise and whether belonging to the Tenant or anybody else, including but not limited to, dogs, cats, birds, rodents, reptiles or marine animals, unless permitted under the terms of a Pet Addendum attached to this Agreement. Tenant shall be subject to a fine of $ __n/a__ for any violation of this paragraph or of the terms of any Pet Addendum that may be a part of this Agreement, and Tenant agrees to pay any such fine upon receipt of Landlord's demand therefore. Payment of any such fine shall not permit Tenant to keep any animal or pet for which the fine was imposed.

13. **Alterations:** The Tenant shall not paint, mark, drive nails or screws into, or otherwise deface or alter walls, ceilings, floors, windows, cabinets, woodwork, stone, ironwork or any other part of the Premises, decorate the Premises, change or remove any existing locks or add any additional locks, or make any alterations, additions, or improvements in, to, on or about the Premises without the Landlord's prior written consent and then only in a workmanlike manner using materials and contractors approved by the Landlord. All such work shall be done at the Tenant's expense and at such times and in such manner as the Landlord may approve, and keys for any changed or additional locks shall immediately be provided to the Landlord. All alterations, additions, and improvements upon the Premises, made by either the Landlord or Tenant, shall become the property of the Landlord and shall remain upon and become a part of the Premises at the end of the tenancy hereby created.

14. **Occupants:** The Tenant shall not allow or permit the Premises to be occupied or used as a residence by any person other than Tenant and the Permitted Occupants. Tenant shall be subject to a fine of $ __2,500.00__ for any violation of this

paragraph, and Tenant agrees to pay any such fine upon receipt of Landlord's demand therefor. Payment of any such fine shall not permit any person for whom the fine was imposed to occupy or use the Premises as a residence.

15. **Rental Application:** In the event the Tenant has submitted a Rental Application in connection with this lease, Tenant acknowledges that the Landlord has relied upon the Application as an inducement for entering into this Lease and Tenant warrants to Landlord that the facts stated in the Application are true to the best of Tenant's knowledge. If any facts stated in the Rental Application prove to be untrue, the Landlord shall have the right to terminate the tenancy and to collect from Tenant any damages resulting therefrom.

16. **Tenant's Duties Upon Termination:** Upon any termination of the Tenancy created hereby, whether by the Landlord or the Tenant and whether for breach or otherwise, the Tenant shall: (1) pay all utility bills due for services to the Premises for which he is responsible and have all such utility services discontinued; (2) vacate the Premises removing there from all Tenant's personal property of whatever nature; (3) properly sweep and clean the Premises, including plumbing fixtures, refrigerators, stoves and sinks, removing there from all rubbish, trash, garbage and refuse; (4) make such repairs and perform such other acts as are necessary to return the Premises, and any appliances or fixtures furnished in connection therewith, in the same condition as when Tenant took possession of the Premises; provided, however, Tenant shall not be responsible for ordinary wear and tear or for repairs required by law or by paragraph 6 above to be performed by Landlord; (5) fasten and lock all doors and windows; (6) return to the Landlord any and all keys, other access devices, parking and pool passes, garage door openers and other similar items to the Premises and any amenities; (7) restore the level of fuel in any fuel tank used by the Tenant to its level as of the Beginning Date of the Tenancy; and (8) notify the Landlord of the address to which the balance of the Security Deposit may be returned. If the Tenant fails to sweep out and clean the Premises, appliances and fixtures as herein provided, Tenant shall become liable, without notice or demand, to the Landlord for the actual costs of cleaning (over and above ordinary wear and tear), which may be deducted from the Security Deposit as provided in paragraph 4 above.

In the event Tenant desires to terminate the Tenancy prior to the end of its term then in effect, Tenant acknowledges and understands that the Landlord will use reasonable efforts to re-rent the Premises, but that the Tenant shall remain responsible for the performance of all the Tenant's obligations under this Agreement until such time as the Landlord may be able to re-rent the Premises, unless the Landlord and the Tenant agree otherwise in writing.

17. **Tenant's Breach:**
(a) **Events Constituting Breach:** It shall constitute a breach of this Agreement if Tenant fails to:
   (i) pay the full amount of rent herein reserved as and when it shall be come due here under; or
   (ii) perform any other promise, duty or obligation herein agreed to by him or imposed upon him by law and such failure shall continue for a period of five (5) days from the date the Landlord provides Tenant with written notice of such failure or shall occur again any time thereafter without any requirement of further notice from the Landlord.

In either of such events and as often as either of them may occur, the Landlord, in addition to all other rights and remedies provided by law, may, at its option and with or without notice to Tenant, either terminate this lease or terminate the Tenant's right to possession of the Premises without terminating this lease.

(b) **Landlord's Right to Possession:** Regardless of whether Landlord terminates this lease or only terminates the Tenant's right of possession without terminating this lease, Landlord shall be immediately entitled to possession of the Premises and the Tenant shall peacefully surrender possession of the Premises to Landlord immediately upon Landlord's demand. In the event Tenant shall fail or refuse to surrender possession of the Premises, Landlord shall, in compliance with Article 2A of Chapter 42 of the General Statutes of North Carolina, reenter and retake possession of the Premises only through a summary ejectment proceeding.

(c) **Fees/Costs of Summary Ejectment Proceeding:** If a summary ejectment proceeding is instituted against Tenant, Landlord shall be entitled to recover from Tenant the following fees/costs in accordance with NC General Statutes §42-46 (i) filing fees charged by the court, (ii) costs for service of process, (iii) the relevant Complaint-Filing Fee, Court Appearance Fee or Second Trial Fee, and (iv) reasonable attorneys' fees actually incurred not to exceed fifteen percent (15%) of the amount owed by Tenant, or fifteen percent (15%) of the monthly rent stated in this Agreement if the summary ejection proceeding is based on a default other than the nonpayment of rent.

(d) **Acceptance of Partial Rent:** Tenant acknowledges and understands that Landlord's acceptance of partial rent or partial housing subsidy will not waive Tenant's breach of this Agreement or limit Landlord's rights to evict Tenant through a summary ejectment proceeding, whether filed before or after Landlord's acceptance of any such partial rent or partial housing subsidy.

(e) **Termination of Lease:** In the event Landlord terminates this lease, all further rights and duties hereunder shall terminate and Landlord shall be entitled to collect from Tenant all accrued but unpaid rents and any damages resulting from the Tenant's breach, including but not limited to damages for Tenant's continued occupancy of the Premises following the Landlord's termination.

(f) **Termination of Tenant's Right of Possession:** In the event Landlord terminates the Tenant's right of possession without terminating this lease, Tenant shall remain liable for the full performance of all the covenants hereof, and Landlord shall use reasonable efforts to re-let the Premises on Tenant's behalf. Any such rentals reserved from such re-letting shall be applied first to the costs of re-letting the Premises and then to the rentals due hereunder. In the event the rentals from such re-letting are insufficient to pay the

Tenant Initials _____  _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com  LGEstates

rentals due hereunder in full, Tenant shall be liable to the Landlord for any deficiency. In the event Landlord institutes a legal action against the Tenant to enforce the lease or to recover any sums due hereunder, Tenant agrees to pay Landlord reasonable attorney's fees in addition to all other damages.

18. **Landlord's Default; Limitation of Remedies and Damages:** Until the Tenant notifies the Landlord in writing of an alleged default and affords the Landlord a reasonable time within which to cure, no default by the Landlord in the performance of any of the promises or obligations herein agreed to by him or imposed upon him by law shall constitute a material breach of this lease and the Tenant shall have no right to terminate this lease for any such default or suspend his performance hereunder. In no event and regardless of their duration shall any defective condition of or failure to repair, maintain, or provide any area, fixture or facility used in connection with recreation or recreational activities, including but not limited to swimming pools, club houses, and tennis courts, constitute a material breach of this lease and the Tenant shall have no right to terminate this lease or to suspend his performance hereunder. In any legal action instituted by the Tenant against the Landlord, the Tenant's damages shall be limited to the difference, if any, between the rent reserved in this lease and the reasonable rental value of the Premises, taking into account the Landlord's breach or breaches, and in no event, except in the case of the Landlord's willful or wanton negligence, shall the Tenant collect any consequential or secondary damages resulting from the breach or breaches, including but not limited to the following items: damage or destruction of furniture or other personal property of any kind located in or about the Premises, moving expenses, storage expenses, alternative interim housing expenses, and expenses of locating and procuring alternative housing.

19. **Bankruptcy:** If any bankruptcy or insolvency proceedings are filed by or against the Tenant or if the Tenant makes any assignment for the benefit of creditors, the Landlord may, at his option, immediately terminate this Tenancy, and reenter and repossess the Premises, subject to the provisions of the Bankruptcy Code (11 USC Section 101, et. seq.) and the order of any court having jurisdiction thereunder.

20. **Tenant's Insurance; Release and Indemnity Provisions:**
(a) **Personal Property Insurance** *(Tenant initial if applicable\*)*:
_____ _____ Tenant shall be required to obtain and maintain throughout the term of the tenancy a renter's insurance policy, which policy shall, without cost to Landlord or Agent, name Landlord and Agent as an additional insured, and to promptly provide Landlord evidence of such insurance upon Landlord's request. In addition to coverage for damage or loss to Tenant's personal property in such amount as Tenant may determine, the policy shall include coverage for bodily injury and property damage for which Tenant may be liable in the amount of _____ .
*\*If not initialed, Tenant shall not be required to obtain a renter's insurance policy*
(b) Whether or not Tenant is required to obtain a renter's insurance policy, Tenant shall be solely responsible for insuring any of his personal property located or stored upon the Premises upon the risks of damage, destruction, or loss resulting from theft, fire, storm and all other hazards and casualties. Regardless of whether the Tenant secures such insurance, the Landlord and his agents shall not be liable for any damage to, or destruction or loss of, any of the Tenant's personal property located or stored upon the Premises regardless of the cause or causes of such damage, destruction, or loss, unless such loss or destruction is attributable to the intentional acts or willful or want on negligence of the Landlord.
(c) The Tenant agrees to release and indemnify the Landlord and his agents from and against liability for injury to the person of the Tenant or to any members of his household resulting from any cause whatsoever except only such personal injury caused by the negligent, or intentional acts of the Landlord or his agents.

21. **Agent:** The Landlord and the Tenant acknowledge that the Landlord may, from time to time in his discretion, engage a third party ("the Agent") to manage, supervise and operate the Premises or the complex, if any, of which they are a part. If such an Agent is managing, supervising and operating the Premises at the time this lease is executed, his name will be shown as "Agent" on the first page hereof. With respect to any Agent engaged pursuant to this paragraph, the Landlord and the Tenant hereby agree that: (1) Agent acts for and represents Landlord in this transaction; (2) Agent shall have only such authority as provided in the management contract existing between the Landlord and Agent; (3) Agent may perform without objection from the Tenant, any obligation or exercise any right of the Landlord imposed or given herein or by law and such performance shall be valid and binding, if authorized by the Landlord, as if performed by the Landlord; (4) the Tenant shall pay all rents to the Agent if directed to do so by the Landlord; (5) except as otherwise provided by law, the Agent shall not be liable to the Tenant for the nonperformance of the obligations or promises of the Landlord contained herein; (6) nothing contained herein shall modify the management contract existing between the Landlord and the Agent; however, the Landlord and the Agent may from time to time modify the management agreement in any manner which they deem appropriate; (7) the Landlord, may, in his discretion and in accordance with any management agreement, remove without replacing or remove and replace any agent engaged to manage, supervise and operate the Premises.

Tenant Initials _____ _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    LGEstates

22. **Form:** The Landlord and Tenant hereby acknowledge that their agreement is evidenced by this form contract which may contain some minor inaccuracies when applied to the particular factual setting of the parties. The Landlord and Tenant agree that the courts shall liberally and broadly interpret this lease, ignoring minor inconsistencies and inaccuracies, and that the courts shall apply the lease to determine all disputes between the parties in the manner which most effectuates their intent as expressed herein. The following rules of construction shall apply: (1) handwritten and typed additions or alterations shall control over the preprinted language when there is an inconsistency between them; (2) the lease shall not be strictly construed against either the Landlord or the Tenant; (3) paragraph headings are used only for convenience of reference and shall not be considered as a substantive part of this lease; (4) words in the singular shall include the plural and the masculine shall include the feminine and neuter genders, as appropriate; and (5) the invalidity of one or more provisions of this lease shall not affect the validity of any other provisions hereof and this lease shall be construed and enforced as if such invalid provision(s) were not included.

23. **Amendment of Laws:** In the event that subsequent to the execution of this lease any state statute regulating or affecting any duty or obligation imposed upon the Landlord pursuant to this lease is enacted, amended, or repealed, the Landlord may, at his option, elect to perform in accordance with such statute, amendment, or act of repeal in lieu of complying with the analogous provision of this lease.

24. **Eminent Domain and Casualties:** The Landlord shall have the option to terminate this lease if the Premises, or any substantial part thereof, are condemned or sold in lieu of condemnation or damaged by flood, storm, fire or other casualty. The Landlord shall give Tenant at least thirty (30) days written notice of any such termination. This lease shall terminate as of the date specified in the notice and the rent will be accounted for between Landlord and Tenant as of that date.

25. **Assignment:** The Tenant shall not assign this lease or sublet the Premises in whole or part.

26. **Waiver:** No waiver of any breach of any obligation or promise contained herein shall be regarded as a waiver of any future breach of the same or any other obligation or promise.

27. **Joint and Several Liability:** If there are multiple persons listed as Tenant, their obligations under this Agreement shall be joint and several.

28. **Other Terms and Conditions:**
(a) If there is an Agent involved in this transaction, Agent hereby discloses to Tenant that Agent is acting for and represents Landlord.
(b) Itemize all addenda to this Contract and attach hereto:
- ☐ Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (form 430-T) (if Premises built prior to 1978)
- ☐ Military Status Addendum (form 436-T)
- ☐ Maintenance Addendum (form 440-T)
- ☐ Pet Addendum (form 442-T)
- ☐ Assistance Animal Addendum (form 443-T)
- ☐ Guaranty Addendum (form 445-T)

☐ OTHER: _____

(c) The following additional terms and conditions shall also be a part of this lease: **With regard to Item 7/Utility Bills, when/if well/septic dry/full, if available, owner will tak advantage of county services which would mean tenant would be responsible for applicable monthly utility bills.**

29. **Inspection of Premises:** Within ___30___ days of occupying the Premises, Tenant has the right to inspect the Premises and complete a Move-in Inspection Form.

30. **Tenant Information:** Tenant acknowledges and understands that during or after the term of this Agreement, the Landlord may provide information about Tenant or relating to the Tenancy in accordance with applicable laws, including but not limited to providing such information to a credit reporting agency.

31. **Execution; Counterparts:** When Tenant signs this lease, he acknowledges he has read and agrees to the provisions of this lease. This lease is executed in ___2___ (number) counterparts with an executed counterpart being retained by each party.

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com         LGEstates

32. **Entire Agreement:** This Agreement contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed in writing. All changes, additions or deletions hereto must be in writing and signed by all parties.

33. **Use of Electronic Means; Notice.** The parties agree that electronic means may be used to sign this Agreement or to make any modifications the parties may agree to, and that any written notice, communication or documents may be transmitted electronically to any e-mail address, cell phone number or fax number used by the parties to communicate during the course of this Agreement. Any notices required or authorized to be given hereunder or pursuant to applicable law may also be mailed or hand delivered to the Tenant at the address of the Premises and to the Landlord at the address of the Agent.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

LANDLORD: Doris H. Riddick

LANDLORD: Stephen Jackson

BY: AGENT: **Waterfront Properties at Lake Gaston, Inc**
[Name of real estate firm]

By: _Jackie C. Halls_ Individual license # 224051 NC Date: 6/9/22
[Signature of authorized representative]
Jackie C. Halls

Address: **1698 Eaton Ferry Road, Littleton, NC 27850**

Telephone: **(252)586-7600** Fax: **(252)586-7955** Email: **wplakeinfo@earthlink.net**

TENANT: _Pamela K. Hartnett_ Date: 6-9-22
[Tenant signature]

Contact information: _____ / _____ / 804-704-0378 / phartnett1731@yahoo.com
                     Home    Work    Cell                 Email

TENANT: _____ Date: _____
[Tenant signature]

Contact information: _____ / _____ / _____ / _____
                     Home    Work    Cell    Email

TENANT: _____ Date: _____
[Tenant signature]

Contact information: _____ / _____ / _____ / _____
                     Home    Work    Cell    Email

TENANT: _____ Date: _____
[Tenant signature]

Contact information: _____ / _____ / _____ / _____
                     Home    Work    Cell    Email

STANDARD FORM 410 - T
Revised 7/2020
© 7/2021

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   LGEstates