**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **PAMELA K. HARTNETT,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.: 3:23-cv-17** |
| | ) |
| **CHARLES VANEVERA. HARDENBERGH, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

**PLAINTIFF'S RESPONSE TO MARI HARDENBERGH'S
PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO COUNT V
<u>CLAIM FOR MALICIOUS PROSECUTION</u>**

COMES NOW your Plaintiff, Pamela K. Hartnett ("Hartnett" or "Plaintiff"), by counsel and herein responds to Mari Liza Hardenbergh's ("Mari" or "Defendant") Partial Motion and Brief in Support of her Summary Judgment as to Plaintiff's Count V, Malicious Prosecution (ECF Nos. 339-340) and states the following:

<u>**INTRODUCTION**</u>

In Defendant's Memorandum in Support of her Motion for Partial Summary Judgment she claims lack of factual allegations that she cooperated in the malicious prosecution of the Plaintiff. Plaintiff herein disputes the Defendant's allegations, and cites to the Defendant's own deposition testimony given on April 8, 2024, and the relevant citations are set forth in detail below, that addresses the issue of her very personal affirmation, active and "voluntary cooperation" to instigate and/or participate with her agent and her admitted attorney in the instant matter, and who is also her husband, Co-Defendant Charles, in the arrest and prosecution of the

1

Plaintiff on both the two criminal complaints and the protective order taken out against the Plaintiff.

On or about May 3, 2022, Defendant and her Co-Defendant attorney and husband Charles V. Hardenbergh ("Charles" or "Co-Defendant" and collectively "Defendants"), sought the two criminal warrants and the Protective Order taken in Charles' name as Petitioner, and which Preliminary Protective Order included his Co Defendant wife and her brother, against the Cross -Defendant and Respondent Plaintiff.

Further, Plaintiff 's evidence herein disproves Defendant's claim that Plaintiff has not plead "special damages" as to her civil malicious prosecution action.

This court has already addressed much of Defendant's partial motion for Summary Judgment as to the sufficiency of the pleadings in its ruling on August 2, 2023, denying Defendant's Rule 12 b Motion to Dismiss Plaintiff's malicious prosecution claims. (ECF Doc. 40, Page ID#'s 611-615)  Said citation will be cited herein as ECF Doc. 40, unless otherwise noted.  As shown below, Plaintiff's evidence cited herein supports the pleadings claiming malicious prosecution by both Defendants.

As set forth herein, the evidence is clear that a reasonable jury could so find that the Defendant's instigated and/or personally affirmed, was actively involved and voluntarily cooperated in obtaining and prosecution of the two criminal Complaints and Protective Order against the Plaintiff and that Plaintiff has suffered damages as to both actions.

### PLAINTIFF'S DISPUTE OF DEFENDANT'S FACTUAL SUMMARY

1.     Defendant's fact paragraph number one claiming Plaintiff's First Amended Complaint ("FAC") paragraphs 75-82 is incorrect, as the full section under the heading of "The Hardenberghs' Criminal and Civil Malicious Prosecution of Hartnett", sets out the paragraphs

75-87 and said paragraphs properly allege the necessary factors for both the criminal and civil malicious prosecution actions against both Defendants. (ECF Doc. 9 and ECF Doc. 40)

2.      Plaintiff disputes Defendant's fact paragraph number one as to being only paragraphs 125-139, as paragraph 125 incorporates by reference and re-alleges each allegation set forth above in the entire complaint. (ECF Doc. 9)

3.      Finally, Plaintiff disputes Defendant's fact paragraph number one as to both the criminal and civil malicious prosecution claims are sought against both Defendants, Mari Hardenbergh and Charles Hardenbergh. (ECF Doc. 9 and ECF Doc. 40)

4.      Plaintiff disputes part of the fact allegation in paragraph number 2 as to the Protective Order in that the Defendant did not sign it, as Defendant was present at the time and there is no evidence of who signed the claimed initial petition claimed issued by a magistrate. However, the Defendant and her brother were included in and covered by the Protective Order signed by Defendant's husband and Defendant was with him at the time the Protective Order was initially sought in the Petersburg General District Court on May 4, 2022. (ECF Doc. 9-14, Page ID# 235-238 and ECF Doc. 40)

5.      Plaintiff disputes Defendant's fact paragraph number 3, as Defendant's Exhibit A speaks for itself, and in fact, Plaintiff's Rule 26 Disclosures identifies Defendant and her Co-Defendant husband and her brother and their knowledge and involvement in both the unfounded criminal charges and the Protective Order sought by the Defendants against the Plaintiff. Further, ECF Doc. 340-1 at Page ID# 5805 cites "documents" in paragraph numbers 12 and 13 as to both the criminal Complaint and Protective Order taken out against Plaintiff, which were done for and with the cooperation of the Defendant, including the Plaintiff's subsequent arrest at paragraph 14.

6.    Plaintiff disputes Defendant's fact paragraph number 4 as being relevant or material to the Motion as Exhibit B was Plaintiff's First Response to Charles Hardenbergh's Request for documents and requests 7 and 8 were properly objected to by the Plaintiff at that time responding on August 18, 2023. ECF Doc 340-2, Page ID#5821. Since that time, Plaintiff has filed seven (7) supplemental responses covering thousands of pages of documents.

7.    Plaintiff disputes Defendant's fact paragraph number 5 as being not relevant or material.

8.    Plaintiff disputes Defendant's fact paragraph number 6 as it is not relevant or a material factual assertion, but instead is pure argument, including the factually disputed claim that Plaintiff has not identified any damages resulting from any action of Defendant that could be considered malicious prosecution.

9.    Plaintiff disputes Defendant's fact paragraph number 7, as Plaintiff identified in her pleading, and if even applicable, all "special damages" stemming from the Defendants' direct and obvious malice by their retaliatory and vindictive actions of filing both the criminal Complaints and the Protective Order in response to Plaintiff having sought the criminal warrants against the Defendants on July 25, 2019 (including a Protective Order against the Defendants) and on November 18, 2019, and that Plaintiff testified against them in the Grand Jury hearing on January 8, 2020.  Finally, included in Defendant's vindictiveness, malic and retaliation is Plaintiff's inquiries concerning the Defendant with the Petersburg City Magistrate office and the Police on March 25, 2022. As to Interrogatory number 6, in Exbibit B, that as part of her damages she incurred a criminal defense bill of approximately $6,500. This billing cost was for the same attorney- Ann Reardon, Esq., who represented Plaintiff from the beginning in May of 2022 on both the criminal charges and the Protective Order.   The criminal charges were nolle

*prossed* on January 27, 2023, in Petersburg General District Court.  Ann Reardon, Esq. defended

the Plaintiff as to the Protective Order tried on the same date and time.  Said Protective Order

matter was withdrawn by the Defendants' attorney Thomas Plofchan, when Defendant was

present at counsel table, when her Co-defendant admitted under oath that their defamation

campaign against the Plaintiff was intended to "bait" Plaintiff into taking some type of criminal

action against them.   (ECF Doc. 9-14 and ECF Doc 40) Further, see the January 27, 2023

transcript of the criminal and Protective Order hearing held in the Petersburg General District

Court. (ECF 9-12)

10.    Plaintiff disputes Defendant's fact paragraph number 8 as being material to said

Motion, as Defendant's July 25, 2024, deposition was ordered by this Court to be retaken and

limited it to questions related to expungement issues, which the Defendant still refused to

properly respond to and did not involve the instant issue of Plaintiff's Count V.

11.    Plaintiff disputes Defendant's fact paragraph number 9 as not citing any material

or relevant facts, but instead is pure argument.

### STATEMENT OF GENUINE MATERIAL FACTS NOT CITED BY DEFENDANT OR OTHERWISE IN DISPUTE PER LOCAL RULE 56 (B)

As the following facts laid out herein will establish, the Defendants criminal Complaints

and Protective Order sought against the Plaintiff were wholly done by the Defendant along with

her Co-defendant and husband, and were maliciously done with Defendant's specific affirmative,

active and voluntary cooperation in bringing the two criminal charges and Protective Order,

maliciously and in retaliation for Plaintiff initially seeking criminal charges against the

Defendants on July 25, 2019, November 18, 2019 and the Special Prosecutor Rick Newman's

Grand Jury indictments obtained against the Defendants on January 8, 2020.

## MATERIAL DOCUMENTS OF THE CASE

12.    The two criminal warrants against the Plaintiff (ECF Doc. 9-8) and part of the subject of the underlying claim for Malicious Prosecution, were based on the criminal complaints sworn out by either the Defendants or her husband Co- Defendant Charles, on or about May 3, 2022.  In either case, both Defendants were present when the two criminal warrants and the Protective Order were sought.

13.    One criminal complaint was for the offense date of March 25, 2023, in the City of Petersburg, and stated the following:

" I base my belief on the following facts:

Between July 24, 2019 and March 25, 2022, James Broome Thorsen and Pamela K. Hartnett did combine, associate, agree, mutually undertake and /or concert together for the purpose of willfully and maliciously injuring myself and my spouse in our reputation, trade, business and/or professions in violation of Virginia Code §18.2-499.

Among their acts, in furtherance of this combination were three attempts to have us falsely charged with crimes in an attempt to extort money.  The attached polygraph examination results (linked at tinyural.com/ctjmp9a3), as well as Thorsen's demand to settle the matter for "one million dollars" were disclosed to the Commonwealth's Attorney before the false charges were dismissed over their objection for the third time in January of 2022.  As recently as March 25, 2022, they continue to attempt to persuade any and all parties who might permit them to file charges against us, including magistrates, police and prosecutors. In addition, they have engaged in stalking and trespassing at our office and residence within the past six months." *(Emphasis added)*.  See ECF Doc. 9-13, Page of 2 Page ID# 234.

14.    The other criminal complaint was for the trespassing in the City of Petersburg and read:

"I base my belief on the following facts:

On December 16, 2022, Pamala Kathleen Hartnett did in violation of Virginia Code §18.2-119 go upon and/or remain upon the land of ***myself and my spouse***, after having been forbidden to do so by a sign posted by ***myself and my spouse*** where it

6

may have been reasonably seen.  See attached photo of the sign and security video of the offense can be seen at: https://youtu.be/tVJU5f1hZwA" (Note: review of YouTube site, shows Mari Hardenbergh as the poster/owner of video with no showing of signage as to No Trespassing.)  (***Emphasis Added***). (ECF doc. 9-13, page 1 of 2 page Id# 233)

15.    Both criminal complaints have been blanked out for unknown reasons, and thus there is no named Complainant identified. (ECF Doc. 202-3, 202-32).

16.    The Petition for Protective Order was sworn out by Co-Defendant Charles on May 4, 2022, in the Petersburg General District Court against Respondent Pamala K. Hartnett, and at page one stated:

> "Respondent has committed assault against myself ***and my spouse*** (Defendant herein) as well as numerous additional crimes, most recently trespassing.  She is also a co-conspirator in an ongoing extortion attempt ***against us***. Respondent is known to be armed and has a history of mental health issues, suicidal tendencies and substance abuse.  Respondent has engaged in a stalking campaign, passing the office and home of the Petitioner on a daily basis. ***Respondent has made specific threats against myself and my spouse.*** (Emphasis added).

17.    As a result of the Petition for Protective Order, a Preliminary Protective Order was entered on May 5, 2022, in the Petersburg General District Court and it covered the Petitioner Charles Hardenbergh and his wife and Co-Defendant Mari and her brother. (ECF Doc. 9-14, Page ID#'s 237-239.)

18. Defendant's Deposition of April 18, 2024 shows the following:

> Pg. 8, lines 20-22:  "… well, I am asserting it on my own and because my husband, who is my attorney,…"

> Pg. 15, lines 1314, 18-21, 23-25: " Do you have any graduate school education? … Thomas Jefferson School of Law…. That was a school in San Diego, California….I started in I believe it was '97;  And did you graduate?.. No, sir."

> Pg. 20, lines 23-25, pg. 21, line 1: "I'm the chief of operations for our law firm, Charles V. Hardenbergh, PC, and I'm also the chief of operations for our marketing technology company, CAMS."

Pg. 21, lines 10-12: "Do you have an ownership interest in CAMS? I believe I do, yes, sir."

Pg. 24, lines 2-5: "Because I manage a lot of properties. I manage not only my own properties but my parents' properties, and that's a lot of different LLCs, a lot of different companies."

Pg. 24, lines 15-19: "I manage all of our properties. There's -- I manage 135 Monroe, I manage 139 Monroe. I manage -- I think we have another lot on -- maybe on Bolling- -- maybe I manage -- is that ours?· Yeah, Bollingbrook."

Pg. 181, Lines 1, 4, 8-11, 12-15: "Elsa Seidel.. She's a friend, colleague.; Was she an Assistant Commonwealth Attorney at the time the initial criminal charges were brought against you? I believe so…. Did she end up working for your law firm? She had worked for my law firm prior to that…She's worked for my law firm off and on for, I don't know, at least eight years."

Pg. 183, lines 14-18, 24-25: "You heard your husband's testimony on January 27th, 2023 in the general district court under questioning by Mr. Plofchan and the Court, where he said he was intending to bait Mrs. Hartnett … when your husband was being questioned, you were in court?"

Pg. 184, lines 4-7, 12, 14-19, 22: "….he was being questioned by the Court, and the Court asked him if he was baiting Mrs. Hartnett with his Facebook posts by using the name Pam heart nut… I don't recall, sir… Do you recall your husband admitting that the name Pam heart nut was meant to be Pam Hartnett? I don't recall…. When your case was nol-prossed, why did you feel it necessary to post Facebook postings and reposts about Pam Hartnett?... I never posted about Pam…. I reposted opinions."

Pg. 189, lines 17-19: "You think Pam's trying -- tried to extort you in the criminal charges brought against you?... Yes, I do."

Page 190, lines 8-11: "…I have used the word extortion…. And your husband's used the word extortion, hadn't he?... We've used the word extortion before, yes."

Page 197, lines 1-4: "I'm just saying you were present when this testimony was given in court under oath by your husband, were you not?...I was there."

Pg. 212, line 19-25: "In the criminal complaint filed by your husband, he says that he and his spouse have been injured in our reputation, trade, business, or profession in violation of Virginia Code Section 18.2-499.· What do you know about that statement?... That it's true."

19.     As supported above, Defendant is her husband's business partner in CAMS which supports Charles V. Hardenbergh, P.C., and they are the co-owners of their home and law office and numerous associated properties, and Defendant is the manager of her attorney's and husband's law practice and thus has intimate knowledge for the basis of his actions.

20.     The first hearing on the Protective Order was set for May 18, 2022, at 2:30 p.m. Defendant was at every Court appearance thereafter related to both the criminal charges and Protective Order and appeared prepared to testify, as she was allowed to remain at Petitioner's counsel table when her husband was testifying on January 27, 2023, and when other of the Defendants' witnesses were excluded.  Defendant was present when their counsel Plofchan made his sudden Motion to withdraw the Protective Order during her Co-Defendant's testimony. (ECF Doc. 9-12)

21.     The Defendants' criminal charges and Protective Order against the Plaintiff were initially sought and prosecuted by the Defendants themselves or with their retained counsel, Ms. Elsa Seidel, Esq. and then Mr. Eric Livingston, Esq. in Petersburg General District Court from May until October 31, 2022 and/or November 7, 2022, with appointment by Petersburg Circuit Court Order entered appointing Eric Olsen ("Olsen" or "Special Prosecutor"), the Commonwealth Attorney for Stafford County, Virginia,. Olsen also handled the Hardenbergh's Expungement case, which Expungement Order was entered on November 3, 2022. *See* attached Exhibit 1.

22.     In undertaking his own criminal investigation of the Defendants' complaints against the Plaintiff, Olsen obtained the services of the Petersburg Police Department to perform a detailed investigation of the Defendants' criminal claims against Hartnett and her counsel.

23.    Olsen thereafter advised Charles Hardenbergh by an emailed letter, dated January 24, 2023, that based on the investigation, he was going to nolle *pross* all the criminal complaints on January 27, 2023, which he in fact did.  *See* attached Exhibit 2.

24.    On that same day, the Defendant's then current civil attorney, Thomas Plofchan, moved to dismiss the Protective Order action against Plaintiff's counsel and proceeded with the Protective Order action against Plaintiff until it became obvious that Charles, under oath before the Court admitted they/he was trying to "bait" Hartnett, at which time Plofchan, and with the physical "cooperation" of Mari seated interior bench behind the counsel table, moved to dismiss the Protective Order against Hartnett.  (ECF Doc. 9-12) See Affidavit of Kimberly R. P. Maiden, Exhibit 3.

MATERIAL CASE BACKGROUD FACTS<br>INCORPORATED INTO PLAINTIFF'S COUNT V

25.    CVH[1] is married to his wife Mari. CVH is an attorney licensed to practice in Virginia since 1997. (ECF Doc. 202-3)

26.    CVH is the Incorporator, sole Director, and Registered Agent of Charles V. Hardenbergh, P.C., for which he practices law.  CVH is the owner of Charles V. Hardenbergh, P.C.  (ECF Doc. 202-4)

27.    Mari Liza Hardenbergh is the Chief Operating Officer of Charles V. Hardenbergh, P.C. (ECF Doc. 202-6)

28.    Per the Petersburg City Real Estate Assessor's Office, the title owner of the real property at 139 Monroe Street, Petersburg, Virginia is "The Monroe Building, Inc." (sic) (LLC). (ECF Doc. 202-7)

---

[1] CVH is known colloquially as and is referred to in depositions often as "Van" in an abbreviation of his middle name.

29.      CVH is the Organizer, President, and Registered Agent of The Monroe Building, LLC, and CVH and/or Mari are the sole owners and members of The Monroe Building, LLC. (ECF Doc. 202-8)

30.      Mari Liza Hardenbergh is the Organizer and sole Member of 135 Monroe, LLC, a member-managed LLC, and Charles V. Hardenbergh, P.C. is the Registered Agent of 135 Monroe, LLC.  (ECF Doc. 202-10)

31.      Per the Petersburg City Real Estate Assessor's Office, the title owner of the real property at 135 Monroe Street, Petersburg, VA  23803-4516 is 135 Monroe, LLC. (ECF Doc.202-11).  The property at 135 Monroe Street, Petersburg, Virginia is immediately adjacent to 139 Monroe Street, Petersburg, Virginia. (ECF Doc. 202-3)

32.      Mari manages each of the properties at 139 Monroe Street, Petersburg, Virginia and 135 Monroe Street, Petersburg, Virginia. (ECF Doc. 202-6)

33.      CVH is the Organizer of Commonwealth Attorney Marketing Service, LLC (CAMS), Charles V. Hardenbergh, PC is its Registered Agent, and Mari Hardenbergh is its Chief Operating Officer.  CAMS specializes in Virginia attorney advertising and in the regular course of its business is capable of and often produces signs and posters for its legal clientele. (ECF Doc. 202-3, 202-5, 202-6, 202-12).

34.      CVH and Mari Liza Hardenbergh also owned and operated a regional charitable organization named Rock Band Van, LLC. (ECF Doc. 202-3)  Hartnett was active in the organization and was listed as its Treasurer and as a Director of Rock Band Van, LLC in SCC filings. (ECF Doc. 202-13)

35.     CVH and Mari Liza Hardenbergh in their respective business entities and activities which they exclusively controlled, had dozens of employees and contractors involved in their businesses. (ECF Doc. 202-3, 202-6)

36.     Hartnett is 63 years old and, until the events at issue in this case, was a life-long resident of Petersburg, Virginia. (ECF Doc. 202-5)

37.     From 2016-2019 Hartnett became close friends with CVH and Mari, who lived within a block and half from her in a Petersburg neighborhood, and Hartnett became a trusted employee and/or contractor and/or volunteer working with CVH, Mari, and their various business interests and charitable efforts.  Hartnett joined the Hardenberghs on vacations and became a primary driver for CVH to take him to court hearings, events, and to his office and to his house in Lexington. (ECF Doc. 202-3, 202-5, 202-6)

38.     Due to CVH's and Mari's mutually-agreed "open" marriage, and with the knowledge and assent of Mari, Hartnett and CVH engaged in a romantic, sexually intimate relationship from 2016-2019. (ECF Doc. 202-3, 202-5, 202-6)

39.     CVH has engaged in and has a reputation for unprovoked, violent behavior, including violence committed at a rental house on the North Carolina Outer Banks, with CVH smashing objects, damaging real property, and throwing things at Hartnett because CVH was angry with Mari after an argument.  CVH tried to paper over this violent behavior by having his North Carolina criminal defense attorney give Hartnett a $5,000.00 personal check for her damages. (ECF Doc.202-3, 202-5, 202-14, 202-15)

40.     As Hartnett has alleged and testified (corroborated in detail) as to the events of the evening of July 20, 2019:

Hartnett joined CVH and Mari in riding in their limousine, a vehicle which the charity Rock Band Van, LLC owned, in joint travel from Petersburg to a charity event in Richmond, Virginia. All three were drinking. On the ride back to Petersburg and while they were riding on I-95 South, there was loud music playing in the back of the limo where they were sitting, and the limo divider between them and the driver was fully up and secured. The parties engaged in an argument about the charity, and Mari verbally abused Hartnett. When Hartnett told Mari and CVH "I'm done with both of you", CVH physically attacked Hartnett on the bench seat in the limo, beat her with his hands, and held a pillow on her face while Mari beat Hartnett about the face and neck, causing visible, bloody injuries. Upon reaching the Hardenbergh house in Petersburg, Hartnett left the limo and walked to her house while in shock. Hartnett engaged in frantic phone texts with CVH and Mari where they "apologized" for their words and violent acts, but Hartnett exclaimed by text "you tried to kill me!" and threatened legal action. Mari came by Hartnett's home to retrieve her dog, but Hartnett would not allow her in the house. CVH without permission entered the house. Upon catching up with Hartnett and taking her phone, CVH continued to beat and injure Hartnett, and he broke a table, some of which events Mari videoed with her phone. Mari left the Hartnett house for the Hardenbergh home and took one of Hartnett's security cameras as she left, while CVH continued to beat and abuse Hartnett. CVH slept in her bed with Hartnett that night. Neither CVH nor Mari offered medical care or help with Hartnett's visible injuries as she was on the verge of unconsciousness.

(ECF Doc. 202-3, 202-5, 202-16, 202-17, 202-18, 202-19)

41.     As Hartnett has alleged and testified (corroborated in detail) as to the events of the ensuing days, July 21, 2019 -July 25, 2019:

The next day CVH and Mari pressured Hartnett to accompany CVH to Lexington. Hartnett acceded due to fear of CVH and Mari and because of her continuing shock. CVH had left a note on Hartnett's bedside table implying an apology and had asked her condition by text. CVH took his car with Hartnett as a passenger to his house outside Lexington, and CVH left Hartnett there whenever he went to his Lexington law office, or he was with her at the house. Hartnett was in a house on a rural state highway with no access to a vehicle and with no nearby available neighbor or business. She contacted several friends to share her plight. She demanded several times that CVH take her home to Petersburg, but he refused. Hartnett tried to rent a car from the Enterprise rental car agency that would pick her up at the house, but no vehicle was available. CVH and Hartnett stayed in Lexington for four nights, and on Thursday July 25, 2019, Hartnett drove CVH to the Hanover County Courthouse and then they returned to Petersburg that afternoon. CVH would not allow Hartnett to be seen in public because of her still-visible facial injuries.

(ECF Doc. 202-3, 202-5, 202-15, 202-17, 202-20, 202-21)

42.    Prior to these physical altercations, for which CVH and Mari were to blame and in which they violently prevailed, Hartnett had never been in a fight with anyone in her life. Hartnett also has never been charged much less convicted of a crime of moral turpitude. (ECF Doc. 202-5, 202-15)

43.    Hartnett initially brought criminal charges against CVH and Mari in Petersburg in July 2019 and in August 2019, but Special Prosecutor Newman obtained grand jury indictments against them on January 8, 2020, which were eventually nolle *prossed* on January 6, 2022. At no time prior to the entry of the nolle *pross* Order did the Hardenberghs or the Special Prosecutor

Newman make it known to the Plaintiff that the Hardenberghs ever denied the charges against

them stemming from their criminal and violent conduct against Hartnett as detailed in the FAC at

¶¶ 24-57. (ECF Doc. 202-3, 202-5, 202-22, 202-23, 202-24, 202-25, 202-26)

44.     After the nolle *pross* of the criminal charges versus the Hardenberghs in open

Court on January 6, 2022, and after the Order dismissing the charges being entered on January

20, 2022, CVH and Mari in late March - April 2022, embarked on a defamation campaign to

harass, bait, and defame Hartnett in order to insult and demean her before the general public and

to subject her to general ridicule and damage her reputation, thereby attempting to cover up their

criminal actions and guilt and to protect the goodwill of their personal business interests.  CVH

and Mari posted or reposted a series of false and defamatory messages on Facebook (a) wrongly

accusing Hartnett of being a "liar", (b) lying about her allegations to law enforcement re: the

Hardenberghs, (c) being a sociopath or mentally deranged, (d) committing violent criminal acts,

(e) embezzling from a past employer, and (f) plotting and scheming "to get money via fixed

verdicts and shady claims". (*See* ECF Doc. 9, Page ID # 128-133)   These posts were made

purposely "ambiguous" with references to Hartnett made as "Pam [Heart symbol] [Peanut

Symbol]" in a thinly-veiled identification of Hartnett. (ECF Doc. 202-3, 202-27, 202-28, 202-29)

45.     During late March – April 2022, a large sign or poster was prominently affixed

and displayed on the south exterior wall of the 139 Monroe Street building, which houses their

home, the offices of Charles V. Hardenbergh, P.C. and CAMS.  The large poster included poorly-

disguised pictures of Hartnett, her counsel, her late father, and Hartnett's sister Mary accusing, or

implying, or depicting them as "Registered Sex Offenders" (plural) (Hartnett's father, on upper

left, posing with Hartnett and her sister Mary as children) or "Extortionists" (plural) (Hartnett's

counsel, on upper right) or "Liars" (plural) (Hartnett, on lower left) or "Violent" (Hartnett's sister

Mary, on lower right) while advertising the services of Charles V. Hardenbergh, P.C., or to "rent this space". An immediately adjacent sign on the south exterior wall of 139 Monroe Street stated "Buildings for Sale" with a red "Sold" stamp and references 135 Monroe Street. (ECF Doc. 9, Page ID # 133; ECF Doc. 202-3, 202-5, 202-6, 202-9, 202-28, 202-30, 202-31)

46.     CVH admits he was involved in the drafting, designing, creating, and printing of the sign. (ECF Doc. 202-31)

47.     The building at 135 Monroe Street was an abandoned church until the Hardenberghs bought it on September 21, 2021 (ECF 202-11) and titled it in the name of 135 Monroe, LLC (*Id.*). The space at 135 Monroe Street was open for lease as stated on the sign posted on the south exterior wall of 139 Monroe Street ("Rent this Space"), but the Hardenberghs never offered space at 139 Monroe Street as available for lease because it was fully occupied. (ECF Doc. 9-11, 202-26, 202-30)

48.     Special Prosecutor Eric Olson had the Petersburg Police Department, Detective Richardson investigate the criminal charges, and ultimately nolle *prossed* the criminal charges on January 27, 2023. (ECF Doc. 202-3, 202-29, 202-32, 202-34) CVH and Mari never sought charges against Hartnett for any alleged assault or battery. (ECF Doc. 202-3, 202-6)

50.     At the hearing for the Protective Order versus Hartnett and upon direct questioning from the Judge, CVH admitted under oath that he was thinking of Hartnett in particular at the time he and Mari made the Facebook posts and reposts with the "Pam [Heart symbol] [Peanut Symbol]" references, and he admitted the sign on the side of 139 Monroe Street was to "bait" Hartnett into providing "evidence" against herself. Upon these admissions in open Court, CVH's counsel immediately withdrew the Petition for Protective Order, ending CVH's testimony. (ECF Doc. 9-12, 202-3, 202-6, 202-29)

51.    Due to CVH's and Mari's violent acts, harassment, defamatory statements about her, and her loss of and damage to her good reputation in Petersburg, Hartnett has had to move her permanent residence to North Carolina from her lifelong home in Petersburg. (ECF Doc. 202-5). Hartnett testified to the damage to her mental health and that the Special Prosecutor Newman believed she had "battered woman's syndrome" and recommended she seek psychiatric therapy, which she has done. (ECF Doc. 202-5, 202-15) where she incurred approximately $6,500.00 in attorney fees for defending both the two criminal complaints and the protective order filed against her by the Defendants, and which is related to this motion.

## ARGUMENT

### A.      Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that a district court shall grant a Motion for Summary Judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

This Court has recently reiterated the proper standard of review upon a Summary Judgment Motion. *Curran v. Axon Enterprise, Inc.*, --- F.Supp.3d ---, 2024 WL 266508 at *3 (E.D. Va., Jan. 24, 2024).

"A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Id*.

"Although the Court is not to weigh evidence or make credibility determinations at the summary judgment phase, the Court is required to determine whether there is a genuine issue for trial." *Id*.

17

"When assessing whether there is a genuine issue for trial, the Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury[.]" *Id.*

"In making its determination, the district court must view the evidence in the light most favorable to the nonmoving party." *Id.*

**THE CRIMINAL CHARGES AND PROTECVE ORDER AGAINST THE PLAINTIFF WERE OBTAINED IN MAY OF 2022 FOR AND WITH THE DEFENDANT'S COOPORATION WITH HER HUSBAND AND CO-DEFENDANT CHARLES HARDENBERGH INSTITUTED BY, OR WITH THE COOPERATION OF THE DEFENDANT**

Defendant claims Plaintiff's malicious prosecution claim cannot proceed against her because there are not facts alleged or established that Defendant took steps to either initiate the prosecution or to adopt and ratify steps which had already been take or instigated by others. (ECF Doc. 340, Page ID# 5795-96)  Defendant also claims "adoption" or "ratification" occurs in the context of an agency relationship. (ECF Doc. 340, Page ID# 5796)

As to facts alleged in the FAC this court has ruled at to the sufficiency of the factual allegations for malicious prosecution as to the Defendant. (See ECF Doc. 40).  Those same facts, including the deposition testimony cited herein of the Defendant and her husband Co-Defendant Charles Hardenbergh, shows that the Defendant either instituted or cooperated, or both as to the two criminal charges and the protective order against the Plaintiff.

To the extent there is an agency issue, the Defendant clearly "adopted" and "ratified" the actions of her husband and Co-Defendant as she and her brother were the beneficiaries of her husband's Protective Order.

Further, the Defendant's history and involvement with the Plaintiff in the underlying criminal charges brought by the Plaintiff in July and November of 2019, and the subsequent

Grand Jury Indictment of the Defendant and her husband by Special Prosecutor Rick Newman

on January 8, 2020, the Defendant's Facebook defamation campaign with her husband from

March to April of 2022, Defendant's knowledge of the Plaintiff's March 25, 2022 visit to the

Petersburg Magistrates office across the street from the Defendant's home/office, thereafter the

Defendant's display of the large defamatory poster on the side of their home/office, then

followed by the Defendants filing of false criminal charges and the false protective order action,

all support the vindictive, retaliatory and malicious intent of both of the Defendants for their

malicious prosecution of the Plaintiff and which lacked any probable cause.

Even Olsen in his January 24, 2023, email letter to Charles Hardenbergh recognized that

the Defendant would seek the pending criminal charges he did as retaliation.

### PLAINTIFF'S CIVIL MALICIOUS PROSECUTION DAMAGES

Defendant claims Plaintiff can't show an alleged arrest, seizure of property or "special

injury" as part of Plaintiff's civil malicious prosecution claim. (ECF Doc. 340, Page ID# 5796-

96)

However, a review of *Ayyildiz v. Kidd* , 220 Va. 1080, 1084-85 (1980) shows Plaintiff

had both alleged and established that she incurred a "special injury."

In *Kidd* the Court held the" special injury' restriction requires allegation and proof of a

special loss or hardship for the malicious prosecution of their original action. "Special injury" in

this restricted sense focuses upon the intention of the defendant(s) (Hardenberghs) in the original

case rather than upon the special circumstances of the Plaintiff (Hartnett). Citing to *Ailstock v.*

*Moore Lime Co.*, 104 Va. 565, 571, 52 S.E. 213, 215 (1905), the *Kidd* Court at 1084 stated "that

if one maliciously makes use of the process of law, with an intention to vex and distress another,

he does it at his peril." *Kidd* then cited at 1084 to a 1816 New Jersey case and stated the

malicious prosecution "must be attended, besides ordinary expenses, with other special grievance or damage, not necessarily to a defense, but superadded to it by the malice and contrivance of the plaintiff. (Here, the Plaintiff means the Hardenberghs who brought the underlying civil protective order and the two original criminal complaints). See Plaintiff's allegations fitting the "special injury" issue in her First Amended Complaint (ECF Doc. 9) and specifically at paragraphs 77,78, 80, 82, 85, 87, 131, 132 ("Mr. Hardenbergh made these false, fabricated allegations with clear knowledge that the allegations were false and (with) malicious ( intent in an effort to retaliate against Hartnett for bringing lawful criminal charges against the Hardenberghs and to cover up and deflect their known criminal guilt), 135,138 ("baiting" the Plaintiff), and 139.

Plaintiff's allegations and facts supporting her "special injury" as to the Defendant's Protective Order action meets the intent and the requirements of *Ayyildiz v. Kidd*.

In addition, as special injuries as stated in the First Amended Complaint, and particularly the paragraphs cited above, Plaintiff had to move from her live long home of Petersburg to North Carolina. Plaintiff was also arrested on the Hardenbergh's attendant criminal warrants at her home in Petersburg on May 16, 2022, she incurred legal fees, in her defense of the criminal warrants and the Protective Order action, and the Hardenbergh's swore out seven (7) unserved criminal violations for Plaintiff's alleged breach of the Protective Order which Olsen had destroyed by his actions on January 27, 2023.

Being defamed *per se* by the Hardenberghs and a month later being twice criminally charged along with a protective order in a small city where you grew up does cause "substantial damage to her reputation" as the Plaintiff has both alleged and proven. (ECF Doc. 9)

## SUMMAY JUDGMENT SHOULD BE DENIED

Finally, Defendant claims as a matter of law no reasonable jury could find her liable for malicious prosecution of Plaintiff. (ECF Doc. 340, Page ID# 5797)

The above argument of both facts and law shows that there are significant matter of factual dispute and credibility issues which makes for the issues to be decided by a jury, not on Defendant's motion for partial summary judgment and accordingly the Defendant's Motion should be DENIED.


### CONCLUSION

The Court should deny the partial motion for summary judgment under FRCP 56, as there are genuine issues of material fact for a jury to decide at trial, and the Defendant Mari Liza Hardenbergh is not entitled to judgment as a matter of law.


Respectfully submitted,
**PAMELA K. HARTNETT**
*Plaintiff*

By:    _____/s/_____
James B. Thorsen, Esquire
VSB No. 18113
Attorney for Plaintiff
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thorsenallen.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November 2024, a copy of the foregoing *Plaintiff's Response to Mari Hardenbergh's Partial Motion for Summary Judgment as to the Claim of Malicious Prosecution* was filed electronically with the clerk of court using CM/ECF system, which will send notification of such filing (NEF) to the following:

Thomas K. Plofchan, Jr., Esquire
VSB No. 34536
46175 Westlake Drive, Suite 320
Potomac Falls, VA 20165
Telephone: (703) 406-7616
Facsimile: (703) 444-9498
Email: tplofchan@westlakelegal.com

Wyatt B. Durrette, Jr., Esquire
VSB No. 04719
Kevin J. Funk, Esquire
VSB No. 65465
Durrette, Arkema, Gerson & Gill PC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
Email: wdurrette@dagglaw.com

By: _____/s/_____
James B. Thorsen, Esquire
VSB No. 18113
Attorney for Plaintiff
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thorsenallen.com