**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **PAMELA K. HARTNETT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: 3:23-cv-17 |
| | ) |
| **CHARLES VANEVERA HARDENBERGH, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S RESPONSE TO CHARLES VANEVERA HARDENBERGH'S**
**PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO THE**
**CLAIM OF MALICIOUS PROSECUTION**

COMES NOW your Plaintiff, Pamela K. Hartnett ("Hartnett"), by counsel and herein responds to Charles Vanevera Hardenbergh's ("Hardenbergh" or "Defendant") Partial Motion and Memorandum in Support for Summary Judgment as to the Claim of Malicious Prosecution (ECF No. 341-342) and states the following:

## INTRODUCTION

Defendant's Memorandum in Support of his Motion for Partial Summary Judgment claims Plaintiff's Amended Complaint is deficient as to the malicious prosecution claim against the Defendant because the complaint fails to allege and establish facts sufficient to establish the Defendant took steps without probable cause or that he acted maliciously. (ECF Doc. 343, Page ID# 5836) Defendant also alleges he provided the full facts as he knew them to the magistrate who issued the criminal warrants and protective order. *Id*., Page ID# 5836-37 at para. 22-25.

Defendant claims Plaintiff cannot identify any statement Defendant made to the magistrate did not fully, fairly or completely disclose all facts and circumstances Defendant knew or believed. *Id*. at par. 28.

Finally, Defendant claims Plaintiff has failed to allege arrest, seizure of property or "special injury" with regard to the Protective Order *Ayyildiz v. Kidd.*

Plaintiff herein disputes the Defendant's allegations set forth above and in his Memorandum, and cites to the Defendant's own deposition testimony given on March 26, 2024 and the relevant citations are set forth in detail below, that addresses the issues of his two criminal complaints, the arrest and prosecution of the Plaintiff on both the two criminal complaints and the protective order taken out against the Plaintiff on or about May 3, 2022. Defendant and his Co-Defendant wife, Mari Hardenbergh ("Mari" or "Co-Defendant" and collectively "Defendants"), sought the two criminal warrants and the Protective Order taken in Charles' name as Petitioner, and which Preliminary Protective Order included his Co-Defendant wife and her brother, against the then criminal Defendant and Respondent, your Plaintiff.

Further, Plaintiff 's evidence herein disproves Defendant's claim that Plaintiff has not pleaded "special damages" as to his civil malicious prosecution action.

This court has already addressed much of Co-Defendant's partial Motion for Summary Judgment as to the sufficiency of the pleadings in its ruling on August 2, 2023, denying Co-Defendant's Rule 12 b Motion to Dismiss Plaintiff's malicious prosecution claims. (ECF Doc. 40, Page ID#'s 611-615) Said citation will be cited herein as ECF Doc. 40, unless otherwise noted. As shown below, Plaintiff's evidence cited herein supports the pleadings claiming malicious prosecution by both Defendants. In fact, the Defendant herein didn't take part in his Co-Defendant's Rule 12 b Motion to dismiss Plaintiff's malicious prosecution claim.

As set forth herein, the evidence is clear that a reasonable jury could so find that the Defendant's instigated without probable cause and did so maliciously and in retaliation against the Plaintiff and that Plaintiff has suffered damages as to both actions, including any "special injury" related to the civil malicious prosecution action.

## PLAINTIFF'S DISPUTE OF DEFENDANT'S FACTUAL SUMMARY

1.     Plaintiff disputes Defendant's fact paragraph number one claiming Plaintiff's First Amended Complaint ("FAC") paragraphs 75-82, as the full section under the heading of "The Hardenberghs' Criminal and Civil Malicious Prosecution of Hartnett", sets out the paragraphs 75-87 and said paragraphs properly allege the necessary factors for both the criminal and civil malicious prosecution actions against both Defendants. (ECF Doc. 9).

2.     Plaintiff disputes Defendant's fact paragraph number one as to being only paragraphs 125-139, as paragraph 125 incorporates by reference and re-alleges each allegation set forth above in the entire complaint.

3.     Finally, Plaintiff agrees with Defendant's fact paragraph number one as to both the criminal and civil malicious prosecution claims are sought against him as well as his wife and Co- Defendant, Mari Hardenbergh.

4.     Plaintiff admits part of the fact allegation in paragraph number 2 as to Ex. Doc. 9-14, the Protective Order and that the Defendant did sign it at ECF Doc, 9-14, Page ID# 236 and it was attested to by a Petersburgh General District Court deputy court clerk.  Further, at ECF Doc. 9-14, Page 1 of 5, Page ID# 235, the Defendant's statement is listed at paragraph number 2. in the Petition for Protective Order issued by the Petersburgh General District Court on May 4, 2022.  (ECF Doc. 9-14, Page ID# 235-238)

3

5.       Plaintiff disputes Defendant's fact paragraph number 3, as Defendant's Exhibit A speaks for itself, and in fact, Plaintiff's Rule 26 Disclosures identifies Defendant and his Co-Defendant wife and her brother and their knowledge and involvement in both the unfounded criminal charges and the Protective Order sought by the Defendants against the Plaintiff. Further, ECF Doc. 342-2 at Page ID# 5847 cites "documents" in paragraph numbers 12 and 13 as to both the criminal Complaint and Protective Order taken out against Plaintiff, which were done for and with the cooperation of the Defendant, including the Plaintiff's subsequent arrest at paragraph 14.

6.       Plaintiff disputes Defendant's fact paragraph number 4 as being relevant or material to the Motion as Exhibit 2 was Plaintiff's First Response to Charles Hardenbergh's Request for documents and requests 7 and 8 were properly objected to by the Plaintiff at that time responding on August 18, 2023. ECF Doc 342-2, Page ID#5864. Since that time Plaintiff has filed seven (7) supplemental responses covering thousands of pages of documents.

7.       Plaintiff disputes Defendant's fact paragraph number 5 as being not relevant or material, and the Plaintiff has produced herein evidence of the Defendant and his wife's intense maliciousness and retaliation towards the Plaintiff.

8.       Plaintiff disputes Defendant's fact paragraph number 6 as it is not a material factual assertion, but instead is pure argument, including the factually disputed claim that Plaintiff has not established Defendant's maliciousness and retaliation, and that Plaintiff has not identified any damages resulting from any action of Defendant that could be considered malicious prosecution. (ECF Doc. 9, par. 132, 138 and 139 as examples)

9.       Plaintiff disputes Defendant's fact paragraph number 7, as Plaintiff identified in her pleading in the First Amended Complaint at paragraphs 75-87 and 125-139, and if even

applicable, all "special damages" stemming from the Defendant's direct and obvious malice by his retaliatory and vindictive actions of filing both the criminal Complaints and the Protective Order in response to Plaintiff having sought the criminal warrants against the Defendants on July 25, 2019 (including a Protective Order against the Defendants) and on November 18, 2019, and that Plaintiff testified against them in the Grand Jury hearing on January 8, 2020. Finally included in Defendant's vindictiveness, malic and retaliation is Plaintiff's inquiries concerning the Defendant with the Petersburg City Magistrate office and the Police on March 25, 2022. As to Interrogatory number 6, in Exbibit 2, that as part of her damages she incurred a criminal defense bill of approximately $6,500. This billing cost was for the same attorney- Ann Reardon, Esq., who represented Plaintiff from the beginning in May of 2022 on both the criminal charges and the Protective Order. The criminal charges were nolle *prossed* on January 27, 2023, in Petersburg General District Court. Ann Reardon, Esq. defended the Plaintiff as to the Protective Order tried on the same date and time. Said Protective Order matter was abruptly withdrawn by the Defendants' attorney Thomas Plofchan, when Defendant was present at counsel table, when her Co-defendant admitted under oath that their defamation campaign against the Plaintiff was intended to "bait" Plaintiff into taking some type of criminal action against them. (ECF Doc. 9-14) Further, *see* ECF Doc. 9-12, the January 27, 2023 transcript of the criminal and Protective Order hearing held in the Petersburg General District Court.

10.     Plaintiff disputes Defendant's fact paragraph number 8 as being not being material to said Motion, as to Defendant's March 26, 2024, deposition and what statements he may have made to the magistrate in obtaining the two criminal warrants against the Plaintiff.

11.     Plaintiff disputes Defendant's fact paragraph number 9 as not citing any material or relevant facts, but instead is pure argument. Plaintiff has produced evidence that disputes

below the underlying factual truth of the two criminal complaints/ warrants and the granting of the protective order.

## STATEMENT OF GENUINE MATERIAL FACTS NOT CITED BY <u>DEFENDANT OR OTHERWISE IN DISPUTE PER LOCAL RULE 56 (B)</u>

As the following facts laid out herein will establish, the Defendant's criminal Complaints and Protective Order sought against the Plaintiff were undertaken by the Defendant along with his Co-defendant wife, and were retaliating and maliciously done with Defendant's specific affirmative, active and voluntary cooperation in bringing the two criminal charges and Protective Order, in retaliation for Plaintiff initially seeking criminal charges against the Defendants on July 25, 2019, November 18, 2019 and the Special Prosecutor Rick Newman's Grand Jury indictments obtained against the Defendants on January 8, 2020.

### <u>MATERIAL DOCUMENTS OF THE CASE</u>

12.     The two criminal warrants against the Plaintiff (ECF Doc. 9-8) and part of the subject of the underlying claim for Malicious Prosecution, were based on the criminal complaints sworn out by either the Defendant or his wife and Co- Defendant, on or about May 3, 2022.  In either case, both Defendants were present when the two criminal warrants and the Protective Order were sought.

13.     One criminal complaint was for the offense date of March 25, 2023, in the City of Petersburg, and stated the following:

" I base my belief on the following facts:

Between July 24, 2019 and March 25, 2022, James Broome Thorsen and Pamela K. Hartnett did combine, associate, agree, mutually undertake and /or concert together for the

purpose of willfully and maliciously injuring myself and my spouse in our reputation, trade, business and/or professions in violation of Virginia Code §18.2-499.

Among their acts, in furtherance of this combination were three attempts to have us falsely charged with crimes in an attempt to extort money. The attached polygraph examination results (linked at tinyural.com/ctjmp9a3), as well as Thorsen's demand to settle the matter for "one million dollars" were disclosed to the Commonwealth's Attorney before the false charges were dismissed over their objection for the third time in January of 2022. As recently as March 25, 2022, they continue to attempt to persuade any and all parties who might permit them to file charges against us, including magistrates, police and prosecutors. In addition, they have engaged in stalking and trespassing at our office and residence within the past six months." *(Emphasis added). (*ECF Doc. 9-13, Page of 2 Page ID# 234)

14.     The other criminal complaint was for the trespassing in the City of Petersburg and read:

"I base my belief on the following facts:

On December 16, 2021, Pamala Kathleen Hartnett did in violation of Virginia Code §18.2-119 go upon and/or remain upon the land of *myself and my spouse*, after having been forbidden to do so by a sign posted by *myself and my spouse* where it may have been reasonably seen. See attached photo of the sign and security video of the offense can be seen at:" (*Emphasis Added*). (ECF Doc. 9-13, page 1 of 2 page Id# 233)

15.     Both criminal complaints have been blanked out at the bottom for unknown reasons, and thus there is no named Complainant identified. (ECF Doc 202-3, page 253/21-23, 259/4-6)

16.    The Petition for Protective Order was sworn out by Defendant on May 4, 2022, in the Petersburg General District Court against Respondent Pamala K. Hartnett, and at page one, paragraph two and he stated:

"Respondent has committed assault against myself *and my spouse* (Co-Defendant herein) as well as numerous additional crimes, most recently trespassing.  She is also a co-conspirator in an ongoing extortion attempt *against us*.  Respondent is known to be armed and has a history of mental health issues, suicidal tendencies and substance abuse.  Respondent has engaged in a stalking campaign, passing the office and home of the Petitioner on a daily basis.  *Respondent has made specific threats against myself and my spouse.* (Emphasis added). (ECF Doc. 9-14, Page ID# 235-236)

17.    As a result of the Petition for Protective Order, a Preliminary Protective Order was entered on May 5, 2022, in the Petersburg General District Court and it covered the Petitioner Charles Hardenbergh and his wife and Co-Defendant Mari and her brother. (ECF Doc. 9-14, Page ID#'s 237-239)

18.    Defendant Charles Hardenbergh's Deposition of March 26, 2024 (ECF Doc. 202-3) states the following:

Pg. 251, lines 16-19:  "… Who's us?... My wife was with me and we had at least one lawyer with us…. Who was the lawyer with you?... Elsa Seidel."

Pg. 252, lines 6-8: "So she was your attorney at the time when you went on May 3rd to get criminal warrants?.. Yes".

Pg. 253, lines 21-25 – Pg. 255, lines 16-18:  "Paragraph 76, thereafter you traveled to Chesterfield County Magistrate's office and obtained a criminal warrant against Hartnett for

conspiracy to injure business reputation, Virginia Code 18.2-499 –…I'm not even sure if I'm the one that signed the criminal complaints, it could have been my wife.

Pg. 258, lines 3-4: "…They might have given it  (the criminal complaints) to my wife or to Ms. Seidel."

Pg. 259, lines 4-6: "…I don't recall who handed the Magistrate the criminal complaint. Like I said, it could have been me or it could have been my wife."

Pg. 275, lines 17-24: "…do you remember during your testimony on January 27th, 2023, under the questioning of you by not only your attorney, Mr. Plofchan, as well as Ms. Hartnett and the Court that -- and your testimony was suddenly stopped and the charge of the protective order was withdrawn by your attorney? …. I do remember that."

19.     Defendant is his wife's business partner in CAMS which supports Charles V. Hardenbergh, P.C., and they are the co-owners of their home and law office and numerous associated properties, and Defendant's wife is the manager of his law practice.

20.     The first hearing on the Protective Order was set for May 18, 2022, at 2:30 p.m. Defendant was at every Court appearance thereafter related to both the criminal charges and Protective Order and appeared prepared to testify, as she was allowed to remain at Petitioner's counsel table when her husband was testifying on January 27, 2023, and when other of the Defendants' witnesses were excluded.  Defendant was present when their counsel Plofchan made his sudden Motion to withdraw the Protective Order during his testimony. (ECF Doc. 9-12)

21.     The Defendants' criminal charges and Protective Order against the Plaintiff were initially sought and prosecuted by the Defendants themselves in Petersburg Geneal District Court in May of 2022 and thereafter two private attorneys until November 7, 2022, with the Petersburg Circuit Court Order entered appointing Eric Olsen ("Olsen" or "Special Prosecutor"), the

Commonwealth Attorney for Stafford County, Virginia as Special Prosecutor.  *See* attached Exhibit 1.  Olsen handled Hardenbergh's Expungement case, which Expungement Order was entered on November 3, 2022.

22.     In undertaking his own criminal investigation of the Defendants' complaints against the Plaintiff, Olsen obtained the services of the Petersburg Police Department to perform a detailed investigation of the Defendants' criminal claims against Hartnett and her counsel.

23.     Olsen thereafter advised Charles by an emailed letter, dated January 24, 2023, that based on the investigation, he was going to nolle *pross* all the criminal complaints on January 27, 2023, which he in fact did.  *See* attached Exhibit 2.

24.     On that same day, the Defendant's civil attorney, Thomas Plofchan, moved to dismiss the Protective Order action against Plaintiff's counsel and proceeded with the Protective Order action against Plaintiff until it became obvious that Charles, under oath before the Court admitted they/he was trying to "bait" Hartnett, at which time Plofchan, and with the impute and "cooperation" of Mari seated at the counsel table, moved to dismiss the Protective Order against Hartnett. (ECF Doc 9-12)  See attached Exhibit 3.


## MATERIAL CASE BACKGROUD FACTS
## INCORPORATED INTO PLAINTIFF'S COUNT V


25.     CVH[1] is married to his wife Mari. (March 26, 2024 Deposition of Charles V. Hardenbergh. CVH is an attorney licensed to practice in Virginia since 1997. (ECF Doc. 202-3)

---

[1] CVH is known colloquially as and is referred to in depositions often as "Van" in an abbreviation of his middle name.

26.     CVH is the Incorporator, sole Director, and Registered Agent of Charles V. Hardenbergh, P.C., for which he practices law. (ECF Doc. 202-4)  The Petersburg office of Charles V. Hardenbergh, P.C. is located in a building at 139 Monroe Street, Petersburg, Virginia, and CVH also has an office in Lexington, Virginia. CVH is the owner of Charles V. Hardenbergh, P.C. (ECF Doc. 202-3, 202-5)

27.     Mari Liza Hardenbergh is the Chief Operating Officer of Charles V. Hardenbergh, P.C. (ECF Doc. 202-6)

28.     Per the Petersburg City Real Estate Assessor's Office, the title owner of the real property at 139 Monroe Street, Petersburg, Virginia is "The Monroe Building, Inc." (sic) (LLC). ((ECF Doc. 202-3, 202-7)

29.     CVH is the Organizer, President, and Registered Agent of The Monroe Building, LLC, and CVH and/or Mari are the sole owners and members of The Monroe Building, LLC. (ECF Doc. 202-3, 202-8, 202-9)

30.     Mari Liza Hardenbergh is the Organizer and sole Member of 135 Monroe, LLC, a member-managed LLC, and Charles V. Hardenbergh, P.C. is the Registered Agent of 135 Monroe, LLC. (ECF Doc. 202-3, 202-10) CVH and/or Mari are the sole owners and members of 135 Monroe, LLC.

31.     Per the Petersburg City Real Estate Assessor's Office, the title owner of the real property at 135 Monroe Street, Petersburg, VA 23803-4516 is 135 Monroe, LLC. The property at 135 Monroe Street, Petersburg, Virginia is immediately adjacent to 139 Monroe Street, Petersburg, Virginia. (ECF Doc. 202-3, 202-11)

32.     Mari manages each of the properties at 139 Monroe Street, Petersburg, Virginia and 135 Monroe Street, Petersburg, Virginia. (ECF Doc. 202-6).

33.     CVH is the Organizer of Commonwealth Attorney Marketing Service, LLC (CAMS), Charles V. Hardenbergh, PC is its Registered Agent, and Mari Hardenbergh is its Chief Operating Officer.  CVH and/or Mari are owners and members of CAMS, whose offices are located at 139 Monroe Street. CAMS specializes in Virginia attorney advertising and in the regular course of its business is capable of and often produces signs and posters for its legal clientele. (ECF Doc. 202-3, 202-5, 202-6, 202-12)

34.     CVH and Mari Liza Hardenbergh also owned and operated a regional charitable organization named Rock Band Van, LLC.  Hartnett was active in the organization and was listed as its Treasurer and as a Director of Rock Band Van, LLC in SCC filings. (ECF Doc. 202-3, 202-13)

35.     CVH and Mari Liza Hardenbergh in their respective business entities and activities which they exclusively controlled, had dozens of employees and contractors involved in their businesses. (ECF Doc. 202-3, 202-6)

36.     Hartnett is 63 years old and, until the events at issue in this case, was a life-long resident of Petersburg, Virginia. (ECF Doc. 202-5)

37.     From 2016-2019 Hartnett became close friends with CVH and Mari, who lived within a block and half from her in a Petersburg neighborhood, and Hartnett became a trusted employee and/or contractor and/or volunteer working with CVH, Mari, and their various business interests and charitable efforts.  Hartnett joined the Hardenberghs on vacations and became a primary driver for CVH to take him to court hearings, events, and to his office and to his house in Lexington. (ECF Doc. 202-3, 202-5, 202-6)

38.     Due to CVH's and Mari's mutually-agreed "open" marriage, and with the knowledge and assent of Mari, Hartnett and CVH engaged in a romantic, sexually intimate relationship from 2016-2019. (ECF Doc. 202-3, 202-5, 202-6)

39.     CVH has engaged in and has a reputation for unprovoked, violent behavior, including violence committed at a rental house on the North Carolina Outer Banks, with CVH smashing objects, damaging real property, and throwing things at Hartnett because CVH was angry with Mari after an argument.  CVH tried to paper over this violent behavior by having his North Carolina criminal defense attorney give Hartnett's counsel a $5,000.00 escrow check for her damages.  The check was never cashed. (ECF Doc. 202-3, 202-5, 202-14, 202-15)

40.     As Hartnett has alleged and testified (corroborated in detail) as to the events of the evening of July 20, 2019:

41.     Hartnett joined CVH and Mari in riding in their limousine, a vehicle which the charity Rock Band Van, LLC owned, in joint travel from Petersburg to a charity event in Richmond, Virginia.   All three were drinking.  On the ride back to Petersburg and while they were riding on I-95 South, there was loud music playing in the back of the limo where they were sitting, and the limo divider between them and the driver was fully up and secured.  The parties engaged in an argument about the charity, and Mari verbally abused Hartnett.  When Hartnett told Mari and CVH "I'm done with both of you", CVH physically attacked Hartnett on the bench seat in the limo, beat her with his hands, and held a pillow on her face while Mari beat Hartnett about the face and neck, causing visible, bloody injuries.  Upon reaching the Hardenbergh house in Petersburg, Hartnett left the limo and walked to her house while in shock. Hartnett engaged in frantic phone texts with CVH and Mari where they "apologized" for their words and violent acts, but Hartnett exclaimed by text "you tried to kill me!" and threatened

13

legal action.  Mari came by Hartnett's home to retrieve her dog, but Hartnett would not allow

her in the house.  CVH without permission entered the house.  Upon catching up with Hartnett

and taking her phone, CVH continued to beat and injure Hartnett, and he broke a table, some of

which events Mari videoed with her phone.  Mari left the Hartnett house for the Hardenbergh

home and took one of Hartnett's security cameras as she left, while CVH continued to beat and

abuse Hartnett.  CVH slept in her bed with Hartnett that night.  Neither CVH nor Mari offered

medical care or help with Hartnett's visible injuries as she was on the verge of unconsciousness.

(ECF Doc. 9-3, 9-5, 202-5, 202-3, 202-15, 202-16, 202-17, 202-18, 202-19)

     42.    As Hartnett has alleged and testified (corroborated in detail) as to the events of the

ensuing days, July 21, 2019 -July 25, 2019:

     The next day CVH and Mari pressured Hartnett to accompany CVH to Lexington.

Hartnett acceded due to fear of CVH and Mari and because of her continuing shock.  CVH had

left a note on Hartnett's bedside table implying an apology and had asked her condition by text.

CVH took his car with Hartnett as a passenger to his house outside Lexington, and CVH left

Hartnett there whenever he went to his Lexington law office, or he was with her at the house.

Hartnett was in a house on a rural state highway with no access to a vehicle and with no nearby

available neighbor or business.  She contacted several friends to share her plight.  She

demanded several times that CVH take her home to Petersburg, but he refused.  Hartnett tried to

rent a car from the Enterprise rental car agency that would pick her up at the house, but no

vehicle was available.  CVH and Hartnett stayed in Lexington for four nights, and on Thursday

July 25, 2019, Hartnett drove CVH to the Hanover County Courthouse and then they returned to

Petersburg that afternoon.  CVH would not allow Hartnett to be seen in public because of her

still-visible facial injuries.

(ECF Doc. 9-4, 9-5, 9-6, 202-3, 202-5, 202-15, 202-17, 202-20, 202-21, Exhibit 20)

43.    Prior to these physical altercations, for which CVH and Mari were to blame and in which they violently prevailed, Hartnett had never been in a fight with anyone in her life. Hartnett also has never been charges, much less convicted of a crime of moral turpitude. (EDC Doc. 202-5, 202-15)

44.    Hartnett initially brought criminal charges against CVH and Mari in Petersburg in July 2019 and in November 2019, but Special Prosecutor Newman obtained grand jury indictments against them on January 8, 2020, which were eventually nolle *prossed* on January 6, 2022. (ECF Doc. 9-7, 9-9, 202-22, 202-23, 202-5, 202-24)  Per the December 10, 2021, e-mail of Special Prosecutor Newman, CVH and Mari had agreed to pay for Hartnett's medical bills and take anger management classes as conditions to nolle *press* the criminal indictments against them. (Newman E-Mail, ECF Doc. 9-8, Page ID # 183).  At no time prior to the entry of the nolle *press* Order did the Hardenberghs or the Special Prosecutor Newman make it known to the Plaintiff that the Hardenberghs ever denied the charges against them stemming from their criminal and violent conduct against Hartnett as detailed in the FAC at ¶¶ 24-57. (ECF Doc. 202-26)

45.    After the nolle *press* of the criminal charges against the Hardenberghs in Court on January 6, 2022, and after the Order dismissing the charges being entered on January 20, 2022, Defendant and Co-Defendant Mari in late March - April 2022, embarked on a defamation campaign to harass, bait, and defame Hartnett in order to insult and demean her before the general public and to subject her to general ridicule and damage her reputation, thereby attempting to protect the goodwill of their personal business interests.  Defendant and Mari posted or reposted a series of false and defamatory messages on Facebook (a) wrongly accusing

Hartnett of being a "liar", (b) lying about her allegations to law enforcement re: the Hardenberghs, (c) being a sociopath or mentally deranged, (d) committing violent criminal acts, (e) embezzling from a past employer, and (f) plotting and scheming "to get money via fixed verdicts and shady claims". (ECF Doc. 9, 9-10, 202-27, 202-28). These posts were made purposely "ambiguous" with references to Hartnett made as "Pam [Heart symbol] [Peanut Symbol]" in a thinly-veiled identification of Hartnett. (Jan. 27, 2023, Transcript of Protective Order Hearing, (ECF Doc. 9-12, 202-3)

46.    During late March – April 2022, a large sign or poster was prominently affixed and displayed on the south exterior wall of the 139 Monroe Street building, which houses the offices of Charles V. Hardenbergh, P.C. and CAMS, and where the Defendants reside. The large poster included poorly-disguised pictures of Hartnett, her counsel, her late father, and Hartnett's sister Mary accusing, or implying, or depicting them as "Registered Sex Offenders" (plural) (Hartnett's father, on upper left, posing with Hartnett and her sister Mary as children) or "Extortionists" (plural) (Hartnett's counsel, on upper right) or "Liars" (plural) (Hartnett, on lower left) or "Violent" (Hartnett's sister Mary, on lower right) while advertising the services of Charles V. Hardenbergh, P.C., or to "rent this space". An immediately adjacent sign on the south exterior wall of 139 Monroe Street stated "Buildings for Sale" with a red "Sold" stamp and references 135 Monroe Street. (ECF Doc. 9, 9-11, 202-3, 202-5, 202-6, 202-9, 202-28, 202-30, 202-31)

47.    CVH admits he was involved in the drafting, designing, creating, and printing of the sign. (ECF Doc. 202-31)

48.    The building at 135 Monroe Street was an abandoned church until the Hardenberghs bought it on September 21, 2021 (ECF Doc. 202-11) and titled it in the name of

135 Monroe, LLC (*Id.*). The space at 135 Monroe Street was open for lease as stated on the sign posted on the south exterior wall of 139 Monroe Street ("Rent this Space"), but the Hardenberghs never offered space at 139 Monroe Street as available for lease because it was fully occupied. (ECF Doc. 9-11, 202-26, 202-30)

49.    Special Prosecutor Eric Olson had the Petersburg Police Department, Detective Richardson investigate the criminal charges, and ultimately nolle *prossed* the criminal charges on January 27, 2023. CVH and Mari never sought charges against Hartnett for any alleged assault or battery by her. (ECF Doc. 9-12, 9-13, 202-3, 202-6, 202-29, 202-32, 202-34)

50.    At the hearing for the Protective Order versus Hartnett and upon direct questioning from the Judge, CVH admitted under oath that he was thinking of Hartnett in particular at the time he and Mari made the Facebook posts and reposts with the "Pam [Heart symbol] [Peanut Symbol]" references, and he admitted the sign on the side of 139 Monroe Street was to "bait" Hartnett into providing "evidence" against herself. Upon these admissions in open Court, CVH's counsel immediately withdrew the Petition for Protective Order, ending CVH's testimony. (ECF Doc. 9-12, 202-3)

51.    Due to Defendant's and Mari's violent acts, harassment, defamatory statements about her, and her loss of and damage to her good reputation in Petersburg, Hartnett has had to move her permanent residence to North Carolina from her lifelong home in Petersburg. (ECF Doc. 202-5) Hartnett testified to the damage to her mental health and that the Special Prosecutor Newman believed she had "battered woman's syndrome" and recommended she seek psychiatric therapy, which she has done. Plaintiff's Objections and Answers to [CVH's] First Discovery Requests, at Answer 6, at p. 7 where she incurred approximately $6,500.00 in attorney fees for

17

defending both the two criminal complaints and the protective order filed against her by the Defendants, and which is related to this motion. (ECF Doc. 202-19)

## ARGUMENT

### A.    Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that a district court shall grant a motion for summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This Court has recently reiterated the proper standard of review upon a summary judgment motion. *Curran v. Axon Enterprise, Inc.*, --- F.Supp.3d ---, 2024 WL 266508 at *3 (E.D. Va., Jan. 24, 2024).

"A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Although the Court is not to weigh evidence or make credibility determinations at the summary judgment phase, the Court is required to determine whether there is a genuine issue for trial." *Id*. "When assessing whether there is a genuine issue for trial, the Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury[.]" *Id*. "In making its determination, the district court must view the evidence in the light most favorable to the nonmoving party." *Id*.

## DEFENDANT'S PROBABLE CAUSE

Defendant's malicious intent in the bringing the criminal complaints and protective orders are well plead and supported by the evidence of any claimed findings by magistrate in the issuance of the two criminal complaints and/or a protective orders were not made upon the full and truthful facts and circumstance known by the Defendants and such issue is not otherwise

determinative here of probable cause both the criminal and civil actions and are otherwise rebutted.

In malicious prosecution cases probable cause is defined as knowledge of such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Whether probable cause existed is determined at the time the defendant took the action initiating the criminal charges. When the facts relating to the question of probable cause are in dispute, the issue is one of fact to be resolved by the trier of fact. See *O'Connor v. Tice*, 281 Va. 1, 9 (2011), (internal citations omitted).

The claim that Defendant allegedly told the magistrate the full facts forming the basis of Count V of the Amended Complaint is not only fully disputed by the evidence herein, as there is no material evidence by the Defendant, only bald allegations, that there was any conspiracy by this Plaintiff with her attorney on March 25, 2022 under Sec.18.2-499 Code of Virginia, or that the Plaintiff did in fact trespass on December 12, 2021, but is in itself not believable. (ECF Doc. 342, para. 22-29)

While Olsen's letter of January 24, 2023 to Defendant, did not comment on probable cause, it's omission is telling as to the lack of probable cause in the first place as Olsen could not make a case of the criminal charges when he had the full facts from the Petersburgh Police interviews of the Plaintiff and her counsel and alleged evidence from the Defendant. Olsen's letter also acknowledges Defendant's reasons for feeling retaliation and implied malic towards the Plaintiff. See attached Exhibit 2.

Olsen's investigation and letter also supports Plaintiff's malicious prosecution action against the Defendant and his Co-Defendant wife as set forth herein and in the Plaintiff's response to Co-Defendant's motion filed herein. Also, Plaintiff's evidence herein supports her

claim of malicious prosecution against the Defendants, and Olsen's overall conclusions, including the issue of the Defendant's retaliation, malic and lack of probable cause. This also goes to the conspiracy issues noted by Olsen as being especially difficult to prove. Further, the alleged evidence of extortion the Defendant claims he had was pure hearsay from his attorney Peter Elides and is totally false.

Finally, with the numerous factual disputes herein, the trier of fact is the one to decide said disputes. See *O'Connor v. Tice,* supra at page 9.

## DEFENDANT'S AFFIDAVIT IS FLAWED, CONTAINS HEARSAY AND FACTUALLY INCORRECT AND SHOULD BE DISREGARDED

Defendant's affidavit, (ECF Doc. 202-3), paragraph one is flawed if you compare what is stated in the two criminal complaints with the facts and circumstances of the case set forth herein, and pending before the court, including Olsen's January 24, 2023, letter to the Defendant. Further, how does one contest what the Defendant claims he says he told the magistrate, other than examining the two criminal complaints, which are themselves not the facts nor anywhere near the circumstances of this case and the procedural history of the parties up to the time of May 3, 2022.

Of course, the magistrate issued the Defendant's criminal warrants based on Defendant's complaint as there was no one there to argue the contrary. However, keep in mind that the Defendants first went to the magistrate across the street from their law office and home and were turned down by that magistrate as that office knew the party's contentious history. Thus, the Defendant went to a magistrate office some 18 miles away at the Chesterfield County Courthouse who did not know the background of the party's contentious history. Nor is it known if the Defendant told the magistrate about the Defendants just concluded public defamation

campaign on Facebook and the poster displayed on their office/home defaming the Plaintiff in late March-April of 2022. Overall, the Defendant's Affidavit is in dispute and the issues should be decided by a jury.

### PLAINTIFF HAS PLEAD "SPECIAL DAMAGES" AND IT IS SUPPORTED BY THE EVIDENCE

Defendant claims Plaintiff can't show an alleged arrest, seizure of property or "special injury" as part of Plaintiff's civil malicious prosecution claim. (ECF Doc. 342)

However, a review of *Ayyildiz v. Kidd* , 220 Va. 1080, 1084-85 (1980) shows Plaintiff had both alleged and established that she incurred "special injury."

In *Kidd* the Court held the "special injury" restriction requires allegation and proof of a special loss or unusual hardship resulting from the malicious prosecution of the original action. "Special injury" in this restricted sense focuses upon the intention of the defendant(s) (Hardenberghs) in the original case rather than upon the special circumstances of the Plaintiff (Hartnett). Citing to *Ailstock v. Moore Lime Co.*, 104 Va. 565, 571, 52 S.E. 213, 215 (1905), the *Kidd* Court at 1084 stated: "that if one maliciously makes use of the process of law, with an intention to vex and distress another, he does it at his peril." This is what the Defendant here did.

*Kidd* then cited at 1084 to a 1816 New Jersey case, and stated the malicious prosecution "must be attended, besides ordinary expenses, with other special grievance or damage, not necessarily incident to a defense, but superadded to it by the malice and contrivance of the plaintiff. (Here, the Plaintiff means the Hardenberghs who brought the underlying civil protective order and the two original criminal complaints).

See  Plaintiff's allegations fitting the "special injury" issue in her First Amended Complaint (ECF Doc. 9), and specifically at paragraphs 77,78, 80, 82, 85, 87, 131, 132 ("Mr.

Hardenbergh made these false, fabricated allegations with clear knowledge that the allegations were false and (with) malicious intent in an effort to retaliate against Hartnett for bringing lawful criminal charges against the Hardenberghs and to cover up and deflect their known criminal guilt), 135,138 ("baiting" the Plaintiff), and 139 (damages claimed).

Plaintiff's allegations and facts supporting her "special injuries" as to the Defendant's Protective Order action meets the intent and the requirements of *Ayyildiz v. Kidd*.

In addition, as special injuries stated in the First Amended Complaint, and particularly the paragraphs cited above, Plaintiff had to move from her live long home of Petersburg to North Carolina.   The plaintiff was also arrested on the Hardenbergh's attendant criminal warrants at her home in Petersburg on May 16, 2022, and she incurred legal fees, in her defense of the criminal warrants and the Protective Order action. Finally, the Hardenbergh's swore out seven (7) unserved criminal violations for Plaintiff's alleged breach of the Protective Order which Olsen had destroyed by his actions on January 27, 2023.

Being defamed *per se* by the Hardenberghs and a month later being twice criminally charged along with a protective order in a small city where you grew up caused "substantial damage to her reputation" as the Plaintiff has both alleged and proven. (ECF Doc. 9) See *PBM Products, LLC v. Mead Johnson Nutrition Co*., 678 F. Supp. 2nd 390, at 399 Ed. Of Va., Richmond Div. (2009) "Although case law supports finding that one's reputation is an asset that can be damaged, see e.g. *Ayylidiz v. Kidd*..."

## CONCLUSION

The Court should deny the Defendant's partial motion for summary judgment under FRCP 56, as there are genuine issues of material fact of probable cause and damages for a jury to

decide at trial, and the Defendant Charles Vanevera Hardenbergh is not entitled to judgment as a matter of law.

Respectfully submitted,
**PAMELA K. HARTNETT**
*Plaintiff*

By: _____/s/_____
James B. Thorsen, Esquire
VSB No. 18113
Attorney for Plaintiff
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thorsenallen.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November 2024, a copy of the foregoing *Plaintiff's Response to Charles Vanevera Hardenbergh's Partial Motion for Summary Judgment as to the Claim of Malicious Prosecution* was filed electronically with the clerk of court using CM/ECF system, which will send notification of such filing (NEF) to the following:

Thomas K. Plofchan, Jr., Esquire
VSB No. 34536
46175 Westlake Drive, Suite 320
Potomac Falls, VA 20165
Telephone: (703) 406-7616
Facsimile: (703) 444-9498
Email: tplofchan@westlakelegal.com

Wyatt B. Durrette, Jr., Esquire
VSB No. 04719
Kevin J. Funk, Esquire
VSB No. 65465
Durrette, Arkema, Gerson & Gill PC

1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
Email: wdurrette@dagglaw.com

By: _____/s/_____
James B. Thorsen, Esquire
VSB No. 18113
Attorney for Plaintiff
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P.O. Box 17094
Richmond, Virginia 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: jthorsen@thorsenallen.com